## SLEDGE & NORFLEET v. C. T. BONDURANT.

Western Section. August 5, 1927.

No petition for Certiorari was filed.

1. **Trial. Where the evidence is undisputed the question of contract or no contract is for the court.**
   Where the evidence is undisputed the question of whether or not it is sufficient to constitute a contract is for the court but where the evidence is conflicting the question must then be submitted to the jury under proper instructions.

2. **Pleading. Affirmative pleas set up in an answer will be governed by the same rules as a declaration in an original suit.**
   Two pleas being in the aspect of several counts supporting a cause of action set up by way of cross action or cross relief, held would be governed by the same rules as would apply to a declaration in an original suit, and if there is evidence to support the verdict of the jury, where the verdict is general and not special with respect to the two separate counts of the declaration, and where there is material evidence to support either of the counts, the verdict of the jury concurred in by the trial judge will not be disturbed on appeal, even though there is no evidence in the record to support one of the counts.

3. **Appeal and error. General verdict if supported by one count is good.**
   Where a general verdict is rendered in an action based on two or more counts the verdict will not be disturbed on appeal if it can be sustained on any one of the counts.

4. **Negligence. Evidence. Evidence held to show a cotton factor guilty of negligence.**
   In an action to recover on certain notes and an open account where a recoupment was sought and it was alleged by the defendant that the plain-

tiff a cotton factor, was negligent held the evidence was sufficient to show the factor guilty of negligence.

**5. Estoppel. Evidence. Evidence held not to show an estoppel.**

In an action involving the sale of certain cotton where plaintiff contended that defendant was estopped to complain of plaintiff's negligence in not selling cotton because of the fact that he afterwards wanted the cotton held longer, held that his acts did not constitute an estoppel because the defendant had not approved of the acts of the plaintiff but was only trying to reduce his damages.

**6. Estoppel. Estoppel must be properly pleaded and proven.**

In the instant case held that estoppel was not properly pleaded and therefore could not be relied upon.

**7. Account stated. Evidence. Evidence held not to show an account stated.**

Where letters were written by the plaintiff in regard to the account prior to the time that the exact state of the account could be determined held that the defendant's failure to acknowledge the letters or deny the account did not render the account as an account stated.

**8. Recoupment. Recoupment only lies against a loss or damage or claim arising out of the same transaction.**

Recoupment will not lie unless the loss on which the recoupment is based arises out of the same transaction on which the action is based.

**9. Recoupment. Recovery in recoupment is not limited by amount originally sued for by plaintiff.**

The recovery on the plea of recoupment is not limited by the amount originally sued for by the plaintiff, but the recovery may be for such amount of damages as the proof shows the defendant has sustained growing out of the same transaction made the basis of the suit of plaintiff, even though the damages proven under the plea of recoupment is in excess of the amount which the plaintiff sued to recover.

**10. Recoupment. Defendant entitled to recover in recoupment where damages arise out of same transaction on which part of plaintiff's action is based.**

Where a plaintiff brought an action on certain notes and on an open account and the defendant sought to recover in recoupment, defendant's damages arising out of the same transaction that the open account was based on, held that the defendant could recover the full amount of his damages although it exceeded the amount sought by plaintiff in his count on the open account.

**11. Evidence. Expert testimony. Expert testimony in regard to the sale of the cotton held properly admitted.**

Where certain persons were qualified as experts and were then asked as to whether cotton of the grade of the cotton in the suit could have been sold at a certain market price in Memphis during certain months, held that the witnesses were qualified to answer the question and the question was a proper question in relation to the issues involved.

Appeal in Error from Circuit Court, Shelby County; Hon. Ben. L. Capell, Judge.

Affirmed.

J. R. McDowell, of Memphis, for plaintiff in error.

Wilson, Gates & Armstrong, of Memphis, for defendant in error.

SENTER, J. The parties will be referred to as in their status in the lower court, as plaintiff and defendant.

The plaintiff, Sledge & Norfleet Company, engaged in Memphis as a cotton factor, sued the defendant, C. T. Bondurant, a planter, merchant and cotton buyer of Hickman, Ky., on three certain notes, one note dated April 5, 1917, for the sum of $5,000, and due and payable November 15, 1917; one note dated May 1, 1917, for the sum of $5,000 and due and payable November 15, 1917; one note dated September 17, 1917, for the sum of $6,000, due and payable November 15, 1917, each of said notes bearing interest from date at the rate of six per cent per annum, and providing for attorney's fees and cost of collection incurred in the collection of the respective notes; and also on an alleged balance of an open account for the sum of $1734.83, and for interest therein from September 1, 1922. This suit was instituted in the circuit court of Shelby county, Tennessee, on March 9, 1923. The defendant Bondurant filed several special pleas to the declaration, but in the present aspect of the case it is unnecessary to notice any of the special pleas of the defendant except the last two, being special pleas Nos. 5 and 6. By the fifth special plea of defendant Bondurant it is averred as follows:

"For further plea in this cause the defendant says that the notes and account referred to in the declaration and sued on in this cause, were on account of advances made by the plaintiff as cotton factor for the defendant, and that as a part of and pursuant to the arrangement between the plaintiff and the defendant as cotton factor and shipper, the defendant shipped to the plaintiff in the season of 1917 and 1918 a large number of bales of cotton, and that the plaintiff as cotton factor had on hand at the beginning of the season of 1919 thirteen (13) bales of cotton, delivered to it by the defendant during the preceding season; and during the months of October and November, 1919, the defendant shipped to the plaintiff four hundred sixty (460) additional bales of cotton.

"Defendant alleges that at the time he began doing business with the plaintiff, it was agreed between plaintiff and defendant that the defendant should have the absolute right to direct when sales of this cotton should be made; and the defendant alleges that before he began doing business with the plaintiff in the season of 1919 he directed that all of his cotton should be sold on arrival and that the plaintiff agreed so to sell said cotton.

"Defendant further alleges that during said months of October and November, 1919, cotton was selling at an average of forty cents (40c) per pound, or $200 per bale, and that there was a strong and steady market for the same, and that the plaintiff, if it had followed defendant's direction and per-

formed its agreement with the defendant, could have sold all of the defendant's cotton at these prices during the months of October and November, but in violation of the defendant's instructions and the plaintiff's agreement with the defendant, plaintiff made sales of only two hundred sixty-two (262) bales of cotton and neglected and refused to make sales of the same during said time but held the same over and against the objection and protest of said defendant, and held the same during the years of 1920 and 1921, at which time there had been a great decline in the market price of cotton; and during the prevalence of this low price of cotton, the defendant made sale of all of said cotton at an average of less than ten cents (10c) per pound, or at a loss of thirty cents (30c) per pound, or $145 per bale, and defendant sustained damages on the one hundred fifty-seven (157) bales of cotton so held by the plaintiff and which it refused to sell, or neglected to sell in October and November, 1919, to the amount of $22,665 and interest on the same; and defendant prays judgment for this amount and that it be deducted from the plaintiff's demand, and the defendant demands a jury to try this cause."

The sixth special plea of defendant is as follows:

"For further plea defendant says that the notes and account sued upon in this cause and referred to in the declaration are evidences of advances made by the plaintiff to the defendant, as cotton factor to shipper.

"Defendant alleges that as a part of the same transaction he agreed to ship and did ship to the plaintiff, as his cotton factor, certain cotton.

"Defendant had been doing business with the plaintiff as cotton factor since the year 1916, and in the beginning of the season 1919 had on hand with the plaintiff, as cotton factor, thirteen (13) bales of cotton and delivered to the plaintiff during the months of October and November, 1919, four hundred sixty (460) additional bales.

"Defendant alleges that it was the duty of the plaintiff as said cotton factor, to exercise due and reasonable care and diligence, to market and sell said cotton for the best obtainable market price, but that the plaintiff negligently and carelessly failed and refused to exercise reasonable and due care and diligence to sell said cotton but held same from October and November, 1919, until the year 1920 and 1921, when the market had declined greatly and then at said time sold said cotton at a loss to the plaintiff of twenty-two thousand six hundred and sixty-five dollars ($22,665) and interest.

"Defendant alleges that on account of this carelessness and negligence on the part of the plaintiff and on account of its failure to exercise due, proper and reasonable care and diligence, as cotton factors, to sell said cotton, he has been damaged in the said sum of twenty-two thousand six hundred and sixty-five dollars ($22,665) and interest on the same for which he prays judgment and that the same be deducted from plaintiff's demands—this being the difference between the sum actually realized from the sale of defendant's cotton and the sum which would have been realized if the plaintiff had exercised due, reasonable and proper care and diligence.

"Defendant prays judgment for this amount and that it be deducted and recouped from the plaintiff's demand, and the defendant demands a jury to try this cause."

The plaintiff filed replication to the special pleas of defendant. In the present situation of the case it is unnecessary to further refer to the replication of plaintiff to any of the special pleas of defendant, except the replication to the special pleas Nos. 5 and 6. The replication of plaintiffs to the fifth special plea of defendant is as follows:

"For replication to the fifth special plea set up by the defendant herein, plaintiff says that while it is true the defendant shipped a large number of bales of cotton to it during the years 1917, 1918, at the beginning of the season of 1919 (September 1, 1919) plaintiff did not carry over thirteen bales, but carried over unsold only five bales of cotton. It is not true that during the months of October and November, 1919, defendant delivered to plaintiff 460 bales of cotton, but the fact is that defendant only delivered to plaintiff during the season of 1919 during the months of October and November, 402 bales of cotton, and no other cotton was ever delivered to plaintiff by defendant during the year 1919, but seventeen bales were shipped by him to plaintiff in the fall of 1920, which was sold and defendant's account duly credited with the net proceeds.

"It is not true that at the time plaintiff and defendant began doing business that it was agreed between plaintiff and defendant that the defendant should have absolute right to direct the sales of the cotton shipped by him to plaintiff, and plaintiff denies that the defendant had any right to control the sale of any of said cotton, and plaintiff further denies that the defendant directed plaintiff at the beginning of the season of 1919 to sell all of his cotton on arrival or that plaintiff agreed to so sell said cotton.

"Plaintiff denies that during the month of October and November, 1919, cotton was selling at an average of 40c per

pound, or $200 per bale, or that there was a strong and steady market for same, but on the contrary says that the prices varied according to grade and staple of cotton, and that there was not a strong demand for cotton but that the demand was exceedingly limited and only the better grade of cotton was saleable during said months, and even then cotton was not always readily saleable but the demand was intermittent.

"Plaintiff denies that it violated any of the instructions of the defendant with reference to selling his cotton, or that it neglected or refused to make sales of defendant's cotton over the objections and protests of defendant, but says, on the contrary, that in January, 1920, defendant, instructed plaintiff to hold his cotton, though plaintiff did not recognize his right to give it such general instructions, and at a later date, about February, 1920, when the plaintiff had an opportunity to sell some of the defendant's cotton, while the defendant was present in plaintiff's cotton room, defendant refused to permit plaintiff to sell the same at what was considered by plaintiff an advantageous price.

"Plaintiff denies that it only sold 260 bales of cotton during the season of 1919, but says, on the contrary, that it sold 282 bales of defendant's cotton at a good price, and the balance was carried over to the season of 1920-1921, because, and only because purchasers at anything like the market price of cotton could not be found, and defendant had refused to permit plaintiff to sell his cotton at an advantageous price, and subsequently cotton declined to such a low price that there was practically no demand for defendant's cotton and no sale could be effected of that part of defendant's cotton which was carried over except at a very low price. The grade of defendant's cotton which was carried over by plaintiff, was low and it was not readily saleable at any time, and especially after the big decline in cotton at a date subsequent to the time when defendant refused to permit plaintiff to sell his cotton.

"Plaintiff denies that defendant sustained a loss of $22,665 and denies that it is liable in any way for whatever loss was sustained by defendant, and denies that it is responsible for the lack of demand of defendant's cotton or the decline in the market or the prevalance of the low price, and denies that it refused or neglected to sell defendant's cotton to best advantage, and denies that it is indebted in any way to defendant for any sum whatever, and denies that defendant is entitled to any judgment against plaintiff."

To the sixth special plea filed by defendant, the plaintiff made replication as follows:

"For replication to the sixth special plea filed by defendant in this cause, plaintiff denies that he carried over thirteen bales of cotton into the season of 1919, and denies that during the months of October and November, 1919, defendant shipped plaintiff 460 additional bales of cotton, and denies that plaintiff failed in its duty as a cotton factor toward the defendant to exercise due and reasonable care and diligence in the marketing and sale of cotton shipped by defendant to it, but on the contrary, acting with due diligence and in good faith, plaintiff obtained for defendant the best obtainable market price for all cotton shipped plaintiff to sell, and a part of which plaintiff sold at a low price, but the price for which said cotton was sold was the best obtainable price at the time it was sold, and plaintiff only sold said cotton at this low price because it could not obtain a better price, and because defendant had refused and failed to pay the indebtedness which he owed plaintiff for money advanced by plaintiff to defendant on this cotton, though frequently requested so to do.

"Plaintiff denies that it negligently and carelessly failed and refused to exercise reasonable and due care and diligence in the sale of said cotton, and denies that it was negligent in not selling said cotton during the months of October and November of 1919, but on the contrary says that it sold all of the cotton as rapidly as possible under the market conditions, and at the best available prices to be obtained on the market, and prices in keeping with the Memphis market on that class of cotton.

"Plaintiff denies that plaintiff suffered a loss of $22,665, and that it is in any way responsible for any loss suffered by defendant, and denies that plaintiff was careless or negligent and failed to exercise due, proper and reasonable care and diligence as cotton factors in the sale of defendant's cotton, and that on that account was responsible for any damage which defendant might have suffered, and denies that the defendant was entitled to any damage against plaintiff or any deduction from plaintiff's demand whatever."

Upon these issues the case was tried before a jury at the January, 1924, term of the court. At the trial of the case, the first trial, the trial judge directed the jury to return a verdict in favor of plaintiff on the notes and account sued on, with interest and attorney's fees, and then submitted to the jury the issues presented by the special pleas of the defendant and plaintiff's replication thereto, on the question of defendant's right to set off or recoupment. In accordance with the instructions of the court the jury returned a verdict in favor of plaintiff for the amount of the notes and

the accrued interest thereon, and the attorney's fees, and the amount of the account, but failed to agree on the question of the right of defendant to set off or recoupment under the special plea. From the judgment rendered against defendant on the notes and account, the defendant Bondurant appealed to the Court of Civil Appeals, and it was there held that the appeal was premature and the case was remanded to the circuit court for a new trial on the special pleas of recoupment or set off. This action by the Court of Civil Appeals was affirmed by the Supreme Court, and upon a remand of the case to the circuit court of Shelby county the case was tried, but the issues limited to the special pleas of recoupment and the replications thereto. At the second trial of the case the plaintiff was permitted to file an amended replication to the special pleas Nos. 5 and 6 of defendant. By the amended replication to these pleas the question is made that set off or recoupment would not lie against the plaintiff's cause of action. The case was then tried before a jury upon these issues alone, and resulted in a verdict by the jury sustaining the special pleas of defendant of recoupment, and the verdict of the jury was in favor of the defendant on its special pleas of recoupment for the sum of $15,102, together with interest on the same from January 20, to the date of the judgment. Judgment was rendered by the court on this verdict of the jury, and in the judgment it is recited that the judgment formerly rendered at the first trial of the case in favor of plaintiff included compound interest in the sum of $954.72, and that said sum of $954.72, making a total judgment in favor of defendant on its special pleas of recoupment, counterclaim and cross-action, to be credited against the former judgment against plaintiff the sum of $21,657.04 and after deducting said amount, and adding the interest to the former judgment in favor of plaintiff left a balance of $8,684.47 adjudged in favor of plaintiff and against defendant, and interest to be calculated on said sum from the date of said final judgment. The cost was adjudged one-fifth against defendant Bondurant and four-fifths against plaintiff, Sledge & Norfleet Company. After a motion for a new trial had been duly made by plaintiff and overruled by the court an appeal was prayed by plaintiff, Sledge & Norfleet, from the verdict of the jury and the judgment of the court sustaining defendant's pleas of recoupment, set off and counterclaim, its appeal was granted and has been perfected to this court, and errors assigned.

The assignments of error are twenty-three in number, and several of these are subdivided into numerous subdivisons, so that it would be impracticable to undertake in this opinion to discuss each of the assignments of error and the subdivisions of the same separately, but for the purposes of this case we will group such of

the assignments of error as present the same or similar questions, and deal with the errors assigned in a more collective way.

By the first assignment of error it is contended that the court should have granted the motion of appellant for a directed verdict, because (1) there was no proof in the record to sustain an alleged contract between the parties, and that neither the letters introduced into the record, nor the conversation between the parties, would constitute a ·contract or agreement upon the part of plaintiff to sell the cotton promptly upon arrival.   (2) Because there is no proof in the record to show any negligence or breach of legal duty on the part of plaintiff as factor of the defendant; (3) because the defendant, by his failure to make timely objection to sales made by plaintiff, ratified plaintiff's actions as his factor, and that by his actions subsequent to January 1, 1920, ratified plaintiff's action and is estopped to set up a breach of any alleged contract or legal duty; (4) because, the account which plaintiff rendered to defendant, not being objected to, though ample opportunity was given to make objections, became an account stated, and hence defendant is estopped to dispute the same, and that the defendant thereby waived any breach of contract or legal duty which plaintiff owed him; (5) because, the defendant by his acts not only failed, but refused to minimize his damage; (6) because, practically all the damage alleged to have been sustained by the defendant is for speculative profits he claims he would have made but for the failure of plaintiff to sell his cotton promptly; (7) because, there is °no evidence whatever to show that cotton of the particular grade and staple of the 141 bales of defendant's cotton which were not promptly sold by plaintiff, could have been sold promptly on arrival, or within thirty days after arrival, the only evidence on this point being vague and indefinite; (8) because, the defendant could not maintain his plea of recoupment as the undisputed proof shows that the damage, if any, resulted from transactions occurring in October and November, 1919, or at a time subsequent thereto, whereas, the notes forming the basis of the greater part of the transaction between the parties were for money borrowed in 1917, and said notes all matured in 1917, long prior to the transaction set out in defendant's plea, which transaction was not a part of or connected with the original notes sued on; that this was set up by plaintiff in the amended replication to defendant's special pleas of set off, recoupment and counterclaim.

By the second assignment of error it is contended that the court erred in not setting aside the verdict of the jury and granting a trial on the issues presented by the special pleas and replications thereto, because (a) the verdict of the jury is not supported by the greater weight and preponderance of the evidence and is against

the preponderance of the evidence and is contrary to the law as given by the court, and there is no evidence to support the verdict rendered; (b) because the verdict of the jury is excessive for the reasons set out in said assignment.

Since the first and second assignments of error cover the main questions involved in the controversy, and especially with reference to the facts, we deem it expedient to deal with these several propositions as enumerated in the first and second assignments of error more in detail.

There is very little conflict in the evidence with reference to the alleged contract, but as to whether under the evidence the letters and conversations between defendant Bondurant and Mr. Norfleet, a member of the firm of Sledge & Norfleet Company, constituted a contract by which Sledge & Norfleet Company, at the beginning of the cotton season of 1919, agreed that the cotton shipped by Bondurant should be sold promptly on the market upon its arrival, and that this represented the express will of both the parties. There is no question under the evidence, but that at the beginning of the 1919 cotton shipping season, Norfleet agreed to handle cotton during that season for Bondurant as the factor of Bondurant, and that Norfleet, speaking for his firm of Sledge & Norfleet Co., stated to Bondurant that his firm would only handle the cotton on the condition that they would be permitted to sell the same promptly upon arrival of the respective shipments, and we think by a preponderance of the evidence Bondurant not only agreed to this condition but stated that it was also his desire that the cotton be promply sold on arrival of respective shipments. This agreement was made between the parties in a conversation occurring between them at the time Bondurant was arranging with plaintiff to handle cotton for him as his factor for the cotton season of 1919-20. Numerous letters from plaintiff to Bondurant are contained in the record in which plaintiff acknowledged the receipt of invoices for cotton being shipped by Bondurant, and these several letters contain the statement that the cotton would be sold promptly on arrival. It is contended for appellant that this arrangement was made at the instance of plaintiff because it wanted it distinctly understood that it would not make advances to Bondurant, or honor his drafts for the respective shipments, except on the condition that they would be permitted to sell the cotton on arrival if there was a fair market for the cotton, and because they did not want to tie up large sums of money in Bondurant's cotton, and because they did not want to leave the question of a sale of the cotton, or when it would be sold, to the direction of Bondurant, which would enable Bondurant to speculate on the market at the expense of plaintiff. It being further contended for plaintiff that, in using the words in

the several letters written to Bondurant acknowledging receipt of the invoices for cotton shipped, that the cotton would be sold promptly upon arrival, or would be handled promptly on arrival, was in the nature of a form letter, and was also notice to Bondurant that they would not hold the cotton subject to the orders or direction of Bondurant as to when the same would be sold, and was not, therefore, intended to be construed as a contract or agreement upon the part of plaintiff that it would sell Bondurant's cotton promptly on arrival regardless of market conditions and regardless of a demand for cotton of the grades shipped by Bondurant. Bondurant testifies that in his first conversation or negotiations with plaintiff at the beginning of the 1919 cotton shipping season, that Mr. Norfleet agreed to handle his cotton and to honor his drafts for the same, but stated at the time he would sell the cotton on arrival of the same, and that his firm would not carry or hold cotton for Bondurant or anyone else that season, and that he said to Norfleet that he desired to let the cotton be sold promptly on arrival. If there was a contract between the parties on this subject, it was made at the time of this conversation, and the letters introduced as evidence written by plaintiff to the defendant acknowledging the receipt of invoices covering cotton shipments would merely be evidential that such a contract or agreement had been made, and would not of itself constitute a contract. Subsequent to the filing of the suit by plaintiff in this case, it appears there was a conference between Bondurant and Norfleet participated in by one of Bondurant's attorneys, and in that conference which was with reference to the alleged indebtedness of Bondurant to plaintiff, Bondurant insisted that plaintiff had violated its agreement to sell the cotton promptly on arrival or within a reasonable time after its arrival, and it appears that Norfleet in that conference did not deny that such an agreement had been made, but claimed that he had sold all of the cotton which he could sell promptly on arrival, and that his failure to sell the 141 bales which were not sold, but carried over, was due to the fact that the cotton was of low grade and that during the months of November and December there was very little demand on the Memphis market for low grade cotton, and that he sold all of defendant's cotton that he could sell during that period, and that the market declined after January 1, 1920, especially on low grade cotton, but that he could have sold a considerable amount of this cotton that was carried over for 32c or 33c per pound about January 20, 1920, to Gage & Company, cotton dealers of Memphis, through the buyer of Gage & Company, a Mr. Potts, but that the defendant Bondurant was at that time in plaintiff's sample room and heard the offer made and declined to accept the offer of Potts, stating that through

another firm a few days before he had sold. cotton of the same grade
and quality for 35c per pound; that during the same month he re-
ceived a letter from Bondurant stating that there was at that time
a prospect of a certain treaty being ratified by the U. S. Senate, and
that it was his judgment that upon a ratification of the treaty it
would result in an advance of the price of cotton and expressing
his desire that his unsold cotton be held from the market pending
the result of the action of the U. S. Senate on the pending treaty.
Reference is here made to this evidence at this time only on the
question as to whether there was any evidence to support the con-
tention of defendant that there was a contract between the parties
by which the plaintiff as the factor of defendant was under con-
tractual obligation to sell this cotton promptly upon arrival, and
the alleged breach of the contract resulting in the damage and loss
to defendant complained of by its special plea on the subject.. Bond-
urant states that he had the positive and distinct agreement with
plaintiff that his cotton would be sold promptly on arrival, and
that he did not know until after January 1, 1920, that the 141 bales
of his cotton had not been sold by plaintiff. While there is but
little conflict in the evidence with reference to the conversation
between the parties upon which the defendant bases the contention
that there was a contract between the parties by the terms of which
plaintiff contracted and agreed to sell this cotton promptly on ar-
rival, yet, taking the evidence as a whole; we cannot say that there
is no conflict in the evidence on this question. If there was no
conflict in the evidence on the question, and both parties agreed
as to the language used at the time the arrangements were made
for the handling of this cotton, it would be a question of law for the
determination of the court as to whether this constituted a con-
tract, and should not have been submitted to the jury. (13 C. J.,
sec. 988, p. 781, and authorities cited). But taking the evidence on
this subject as a whole, and also the statements contained in the
several letters written by plaintiff to Bondurant to the effect that
the cotton would be handled promptly on arrival, we cannot say
that there is no conflict in the evidence. There being some conflict
in the evidence, and the purport of the same, and about which
reasonable men could disagree, we think it proper as a question of
fact, to be submitted to the jury under a proper instruction. The
charge of the court to the jury on this subject, is full, and we think
free from objections, if it was proper matter at all to be submitted
to the jury. (13 C. J., sec. 988, p. 781, and notes; 6 R. C. L., sec. .
249, p. 863, and notes.) However, by the sixth plea of defendant
it is contended that plaintiff failed to exercise the degree of dili-
gence required of a cotton factor in handling the cotton of defend-
ant, and that the negligent failure of plaintiff to sell the 141 bales

out of the 602 shipped it during the months of October and November, 1919, was a violation of its duty under the law as a cotton factor, and that this lack of diligence and negligence upon the part of plaintiff, and its failure to sell this cotton within a reasonable time after its arrival, resulted in the loss and damage complained of by defendant under its sixth special plea.

Inasmuch as plaintiff was making two separate and distinct defenses, both of which became affirmative pleas, one based upon an alleged specific contract, and its breach, and the other on the alleged negligence and lack of diligence and violation of duty required by law of plaintiff. These pleas being in the aspect of separate counts supporting a cause of action, set up by way of cross action, or cross relief sought, we think would be governed by the same rules as would apply to a declaration in an original suit, and if there is evidence to support the verdict of the jury, where the verdict is general and not special with respect to the two separate counts of the declaration, and where there is material evidence to support either of the counts, the verdict of the jury concurred in by the trial judge will not be disturbed on appeal, even though there is no evidence in the record to support one of the counts. In the recent case of Drennan Baking Co. v. Mrs. Nola Wiggins, decided by this court, in an opinion by Mr. Justice Heiskell, it is said: "It is our opinion that there is material evidence to support the verdict under the first court of the declaration, and that the trial court committed no error in regard to the law applicable to said count, therefore, it is not necessary to consider the assignments of error applicable to the second count. If the judgment is maintainable under the common-law count, this court will not reverse the case because the evidence does not support a verdict under the count based upon a violation of the city ordinances, nor on account of any error committed by the court in regard to the law applicable to the second count." In support of the holding by this court in that case, the case of Railroad v. Gurley, 12 Lea., 45, is cited. In the case of Railroad v. Gurley, Code section 2969 is cited and quoted as follows: "If any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts." In that case it is further said by the court: "It is not necessary to determine the point, for we are clearly of the opinion that the judgment may be applied to the finding of the jury on the other count, if good, even if the finding of the first count be not sustained by the evidence. And this for the obvious reason that if a defendant be found guilty of negligence upon either count of the declaration, the injury to the deceased and the measure of the damages is precisely the same." The case of Railroad v. Gurley was a suit for damages for personal injuries, and there were two counts of the declaration, the first count of the declaration was based upon the ground that the

switch in question was unsafe and dangerous for want of a target. The other count claimed that the yard master was incompetent for the performance of the duties of his office, and that the defendant had, or by the use of such care, prudence and vigilence as it was bound to employ, could have had notice of his incompetency and negligently retained him in its service. Upon the trial of the case the jury returned a general verdict in favor of plaintiff. On appeal to the Supreme Court one of the grounds relied upon for reversal of the case was that there was no evidence to sustain the finding on the first count of the declaration, and the judgment being general on the entire finding and bad in part is bad altogether. It was in this connection that the court said that it was unnecessary to consider the question or the point made that there was no evidence to support a verdict on the first count, since the judgment may be applied to the finding of the jury on the other count, if good, even if the finding on the first count is not sustained by the evidence. Other cases may be cited supporting this holding. Taylor v. State, 3 Heisk., 460; Parham v. State, 10 Lea., 498.

· If it be conceded that there was no evidence to support the fifth special plea of defendant, that there was a contract between the parties by the terms of which plaintiff undertook and agreed to handle this cotton promptly on delivery, the defendant's claim for damages as set forth under the sixth special plea, alleging negligent violation of the common-law duty of plaintiff, and lack of diligence, and if there is evidence in the record to support the verdict of the jury on the sixth special plea, and there is no error in the charge of the court, or the admission of evidence, (all of which will be adverted to later) the verdict cannot be disturbed on appeal. Without going into a discussion and review of all the evidence contained in the record it is only material for a determination of the question made to ascertain if there is any evidence showing or tending to show negligence upon the part of plaintiff in the handling of the cotton of defendant. To state it differently, is there any evidence that the plaintiff failed to exercise that degree of diligence and judgment required by law of a cotton factor in dealing with the cotton of its customer? On this question there is a decided conflict. Bondurant states that there was an active demand for cotton of the grade of the 141 bales carried over all during the months of October, November and December, and extending to about February 1, 1920. Bondurant states on this subject as follows: "There was a very active market in October, November and December, and the price of cotton gradually went up from October to the first of January. They scrambled for cotton at most any price it was offered." This witness stated further with reference to a demand for cotton of the grade and staple shipped by him to plaintiff that there was a big demand

for it. The witness Sam Reid, an experienced cotton dealer in Memphis, stated: "For cotton of this grade and staple the demand was very keen up until the first of January; it applied to all grades with me; a very good demand." The witness, Tom Wilerson, for defendant, stated that there was a very active demand up until spring. "I think you could sell most any kind of cotton up till March." "Q. Including low grade cotton. A: Yes, sir, I think you could sell anything up until about March, maybe the middle of February; you had to get a rain check to get any cotton in 1919. I was trying to buy cotton. They had their bookkeepers out buying. You could have sold anything." Witness E. P. Newbern, another cotton dealer in Memphis, of experience and who had qualified as an expert witness on the subject of market conditions for cotton in the fall months of 1919, and January and February and March, 1920, stated: "There was a good demand for any kind of cotton during the fall of 1919, regardless of what the cotton looked like, up until the first of March." This witness said that the demand was the best that he had ever seen, and there was a scramble on the part of buyers to get cotton; every kind of cotton that witness had ever seen. To the same effect is the evidence of Frank Wilburn, B. A. Bland, Martin Luckey.

While there is considerable evidence in the record that there was little or no demand for low grade cotton in the fall of 1919, and that much low grade cotton was carried over, yet there is a decided conflict in the evidence on this question, and much material evidence to the effect that there was a good demand for cotton of this grade prior to January 1, 1920. Under this assignment of error it is further contended that the defendant, by his failure to make timely objections to sales made by plaintiff, ratified plaintiff's actions by his factor, and by his actions subsequent to 1920, ratified plaintiff's action, and is therefore estopped to complain; and that because the account which plaintiff rendered to defendant, not being objected to, after ample opportunity was given to make objection, became an account stated, and hence defendant was estopped to dispute the same, and that defendant therefore waived any breach of the contract or legal duty which plaintiff owed him, and because the defendant, by his acts not only failed, but refused to minimize his damages; and because practically all the damage alleged to have been sustained by the defendant is for speculative profits, and because the cotton in question could not have been sold promptly on arrival, or within thirty days after arrival, and because the evidence on this point is vague and indefinite. These several contentions, we think, cannot be sustained. There is considerable evidence in the record that there was a strong demand during the months of October, November and December, 1919, for

this same grade of cotton on the Memphis market, and that the cotton could have been sold during those months at the current market value for cotton of that grade. If this cotton had been sold at any time during the fall of 1919 and prior to January 1, 1920, it would have brought about 40c per lb., the current market price for cotton of that grade on the Memphis market during those months. There is no dispute but that cotton of this grade began to decline about the first of January, and continued to decline without interruption, and without ever going back to the market price of October, November and December, 1919. The defendant states that he thought plaintiff sold all of his cotton prior to January 1, 1920, and did not know until later in the month of January, 1920, that plaintiff had failed to sell all this cotton. If there was a good demand for this cotton during the months of October, November and December, the plaintiff could have sold it before the decline set in and at an advantageous price to the defendant. Due diligence upon the part of the plaintiff would have resulted in a sale of this cotton prior to the decline in the market according to the evidence of several witnesses, and while there is a decided conflict in the evidence on this question, the verdict of the jury determined the question in favor of the contention of the defendant and against the contention of the plaintiff. There being some material evidence to support the verdict of the jury, this court cannot inquire as to the preponderance of the evidence since the verdict of the jury if supported by any evidence, is conclusive on that question. On the question of estoppel, or a waiver by defendant because of his subsequent conduct, we think it sufficiently appears from his evidence, that after the decline set in, and the failure of plaintiff to sell the cotton at a time before the decline set in, he had hopes that the market would improve. He states that the plaintiff had let the market get away, and that after the market had declined, and after the plaintiff had permitted the market to go off before selling his cotton, he was simply seeking to minimize the damage by suggestion that there was a prospect for an improvement in the market which would reduce the loss already sustained by reason of the failure of plaintiff to sell the cotton before the decline set in. He also testifies with reference to the Potts incident, and denies that there was a specific offer by Potts to buy a quantity of this cotton in January at 32c or 33c, but that it was in the nature of an inquiry. He also explains the meaning of his letter written to plaintiff in January with reference to the pending treaty before the U. S. Senate, as being merely a suggestion setting forth his views that there would probably result favorable reaction in the market if the treaty was adopted. He further states that all this occurred after plaintiff had incurred the loss by failing to sell the cotton before the decline in the market set in. There was a

conflict in the evidence on this question, and the court gave full, explicit and specific instructions to the jury with reference to the duty of the defendant to minimize his loss, and the effect it would have on his claim if they found that he had not exercised proper diligence in seeking to minimize the loss. We will add that the replication to those special pleas did not set up an estoppel or waiver, and that in order to avail by this defense it must be specially and properly pleaded. (Dunlap v. Sawvel, 142 Tenn., 696, and cases cited; Warehouse Co. v. Lee, 172 Ky., 171, citing a long list of cases.) Nor do we think that the several letters written by plaintiff to defendant requesting settlement of the indebtedness claimed, would constitute a stated account, acquiesced in by the defendant. It is true that before all the cotton had been finally sold complainant wrote defendant several letters with reference to the state of his account with plaintiff, and requesting that the account be placed in a more satisfactory condition, either by the payment or the part payment, or by additional collateral, or by shipping cotton to be applied on the indebtedness. This occurred prior to a final sale of the cotton and before the exact state of the account could be determined, and could not, therefore, be considered as an ''account stated.''

Another, and probably a more serious question is made with reference to the right of defendant to maintain either set-off or recoupment against the demand of plaintiff. We think it clear from the evidence that no part of defendant's counterclaim grew out of the transaction in which the three notes sued on arose. These three notes were executed by the defendant to plaintiff, one in April, 1917, one in May, 1917, and one in September, 1917, and all due and payable November 15, 1917. We also think it clear that the defendant could not rely upon a plea of set-off, by pleading a claim of unliquidated damages against these notes. The notes were for a stated amount, and proved themselves, while the claim of defendant is based upon loss or damage resulting, either from a failure to exercise ordinary care and diligence in the sale of his cotton, or a loss or damage sustained on account of the breach of a specific contract to sell the cotton promptly on arrival, and in either event proof of the loss or damage resulting would be necessary to support the claim. Hence set-off would not lie. The question then occurs whether recoupment would lie. Recoupment only lies against a loss or damage or claim arising out of the same transaction. The alleged loss and damage claimed by the defendant is for the alleged failure of plaintiff to exercise reasonable and proper diligence in the sale of cotton shipped during the months of October and November, 1919, or for the breach of a contract alleged to have been made about September 1, 1919, with reference to the handling of cotton shipped by defendant to plaintiff for the season

of 1919. If the suit of plaintiff was confined to a suit on the three notes in question, the defendant could not set up by way of recoupment a loss or damage growing out of subsequent transactions. We think this is too well settled and too elementary to require the citation of authorities. However, the suit of plaintiff was not alone on the three notes, but was also on the balance of an account alleged to be past due and owing by defendant to plaintiff. There is a statement of this account filed as an exhibit in the record by plaintiff, and an examination of the account shows that it covers the transactions with reference to the cotton shipped by the defendant to plaintiff in 1919, and out of which the alleged claim for damages by defendant arises. This account shows the number of bales of cotton shipped by defendant during the months of October and November, 1919, and also the amount of drafts drawn by defendant against the cotton shipments made by him, and paid by plaintiff on cotton shipped in the months of October and November, 1919; and shows the amount received by plaintiff for the cotton shipped and the credits entered on the account, leaving the alleged balance of $1,636.63, with interest, a total of $1734.83. This balance on this account sued for by plaintiff grew out of the same cotton transactions about which the defendant complains by his two said special pleas 5 and 6. If the plaintiff had sued alone on this alleged balance due on the open account, certainly the defendant could have properly set up recoupment by special plea alleging damages resulting and growing out of the same transaction. (Mack v. Construction Co., 153 Tenn., 260.) We deem it too well settled to cite authority on the proposition that a defendant when sued, may recoup for unliquidated damages on account of all matters growing out of the same transaction upon which plaintiff bases his suit. In the case of J. C. Ford, trustee v. W. A. Adams, the Court of Civil Appeals, in an opinion by Mr. Justice Davis, held that where the customer of a cotton factor was sued for advances made by the factor to the customer on cotton shipped to the factor by the customer, he could by proper plea recoup and counterclaim damages as a result of the failure of the factor to sell the cotton according to the instructions given by the customer. We think it also the settled law that the recovery on the plea of recoupment is not limited by the amount originally sued for by the plaintiff, but the recovery may be for such amount of damages as the proof shows the defendant has sustained growing out of the same transaction made the basis of the suit of plaintiff, even though the damages proven under the plea of recoupment is in excess of the amount which the plaintiff sues to recover. This, we think, is authorized both by the statute in this State (secs. 4639, 4640, and 4643, Shannon's Code) and also by the decisions of courts. (Mack v. Con-

struction Co., supra; Blair v. Johnson, 111 Tenn., 116.)  In this view of the case, there being no dispute in the evidence but that the balance on the account sued on by plaintiff of something over $1700, grew out of the transactions between plaintiff and defendant for cotton handled by plaintiff for the defendant during the cotton season of 1919, the defendant had the right to rely upon recoupment for the alleged loss and damage resulting on account of the alleged failure of plaintiff to sell this cotton promptly, either under the alleged contract or because of the alleged common-law negligence, and if the proof warranted a verdict in favor of defendant on his plea of recoupment for an amount in excess of the amount sued for and against which the plea of recoupment was filed, the defendant could recover for the full amount of damages shown to have been sustained.

Other assignments of error present the question of the admissibility of certain evidence permitted to be introduced over the objections of plaintiff.  We have carefully examined the assignments of error covering the alleged error of the court in admitting the line of evidence complained of.  The evidence of these witnesses show that they were each engaged in the cotton business in the City of Memphis during the year 1919 and for some years prior thereto and for some years subsequent thereto.  They testified that they were familiar with market conditions in Memphis during the period in question; that they were familiar with the price and market for cotton of the various grades.  They qualified as expert witnesses on the subjects about which they were examined. We do not think that there was error in admitting this evidence. The evidence objected to by plaintiff where the witnesses were asked if cotton of this grade could have been sold at the market prices in Memphis during the months of October, November and December by the exercise of proper diligence, was expert evidence by witnesses who qualified as experts, and was not the mere expression of opinion by laymen.  This was one of the very questions to be determined, and was certainly a proper subject for expert evidence.  The jury could not determine this fact except upon the evidence of witnesses who were in a position to know the facts about which they testified.

Other assignments of error are directed to certain portions of the charge of the court.  We have carefully examined the charge of the court, and do not think, when taken as a whole, there was any error on any proposition submitted.  The charge is elaborate, and covers every phase of the case and the many questions involved.  It is fair, and we think an excellent statement of the law on the several propositions.

Other assignments of error are based upon the refusal of the trial judge to give certain special requests tendered by plaintiff

in charge to the jury. These were numerous, and an assignment of error is based upon each separate request tendered and refused. Without further burdening this opinion by a detailed discussion of each of these several special requests, and the assignments of error based thereon, suffice it to say that we have carefully examined each of these special requests, and where they contain a sound statement of the law, we find it fully covered by the general charge, and that there was no error in the action of the court in refusing these several special requests tendered by plaintiff.

There are many other assignments of error, but where they have not been specifically discussed in this opinion, they have been covered sufficiently in the discussion of other assignments of error presenting the same or similar questions.

We have carefully examined the record and the numerous authorities cited, and the elaborate and excellent briefs filed by counsel. The conclusion we reach is that there was material evidence to support the verdict of the jury; there was no error in the charge of the court, there was no error in the ruling of the court on the evidence complained of; there was no error in the action of the court in refusing the special requests, tendered by plaintiff; there was no error in the action of the court in overruling plaintiff's motion for a new trial. It results that all assignments of error are overruled, and the judgment is affirmed. Interest will be calculated from the date of the respective judgments and added to the respective judgments. The cost of this appeal will be paid by appellant and surety on the appeal bond.

Heiskell and Owen, JJ., concur.