SOUTHEASTERN GREYHOUND LINES, INC., *v.* GROVES.

(*Nashville*, December Term, 1939.)

Opinion filed February 17, 1940.

W. M. Fuqua and J. Ross Cheshire, Jr., both of Nashville, for plaintiff in error.

Z. Alexander Looby, of Nashville, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This suit was instituted by Helen Groves, colored, a school teacher residing in Nashville, against the Southeastern Greyhound Lines, Inc., to recover damages for personal injuries. The parties will be referred to as plaintiff and defendant as they appeared in the trial court.

The jury returned a verdict in favor of plaintiff for $500, upon which judgment was entered, and a motion for a new trial by defendant was overruled. Upon ap-

peal, the Court of Appeals affirmed the judgment of the circuit court. The defendant filed a petition for *certiorari* in this court, which has heretofore been granted and argument heard.

On the afternoon of Saturday, May 22, 1937, plaintiff purchased from defendant a ticket from Nashville to Mulloys Station and embarked on one of its motorbusses operating between Nashville and Louisville, the time of its departure being five-ten. Mulloys Station is located in the northern section of Sumner County on the main highway connecting Nashville and Louisville. It is a small village with a store, filling station, restaurant and blacksmith shop, and is a definitely known place on that run. This was a large motorbus and it was filled with passengers. Plaintiff surrendered her ticket to the motorman upon entering the bus and requested him to let her off at Mulloys Station, saying she did not know the location of that place. The bus was not stopped at Mulloys Station. The motorman testified that upon approaching this village he slowed down and announced the station in the customary manner. Plaintiff testified that if he called the station she did not hear him. About a mile beyond Mulloys Station it was discovered that plaintiff had been carried beyond her destination. It was raining and plaintiff did not wish to get off at that place. In that situation the motorman said to plaintiff that all he could do would be to take her to the next station, Ellen Inn, and give her a pass back to Mulloys on the southbound motorbus. This seems to have been agreed to, and upon arriving at Ellen Inn plaintiff left the bus and was given a pass back to Mulloys. Ellen Inn is a small village about seven miles north of Mulloys Station and is located on the line between Kentucky and Tennessee. The highway at that place is 30 feet wide. There is a

filling station on the right side of the highway as one travels north, with a roof over it, operated by Henry Butcher. Across the street from this filling station there is a restaurant, where beer and other drinks are sold, which was operated by Mrs. Lovell. This restaurant has a veranda or porch fronting on the highway. Plaintiff, upon leaving the bus, crossed the highway to this restaurant and stood on the outside a few minutes, when she accepted Mrs. Lovell's invitation to come inside the building. Whether she stood on the porch or on the highway does not appear. There is evidence that it was raining moderately. It also appears that plaintiff had an umbrella and a suitcase. Plaintiff arrived at Ellen Inn about six-fifteen. Upon learning that the south-bound bus would not arrive until eleven o'clock that night, she went across the street to the filling station and procured Mr. Butcher to drive her to Mulloys Station, for which she paid him $2. Upon arriving at this latter place, she employed another party to drive her about two miles into the country to the home of her friends with whom she was to spend the week-end, paying him therefor the sum of fifty cents. The next morning plaintiff awoke with a severe cold, returned to Nashville that afternoon, and was confined to her bed for two weeks with influenza, which she insists caused her to develop diabetes. It is her theory that her illness was due to her exposure resulting from the negligence of defendant in not stopping and discharging her at Mulloys Station. Plaintiff does not testify directly that it rained on her while she was at Ellen Inn. Since it appears that it was not raining hard, that plaintiff had an umbrella, that the filling station on the east side of the highway had a roof over it, and the restaurant on the opposite side had a porch, we

find no evidence from which it could be concluded that plaintiff's illness resulted from exposure while she was at Ellen Inn. On the other hand, we infer from her testimony that she bases her claim on exposure resulting in illness while being driven by Mr. Butcher from Ellen Inn to Mulloys Station. Mr. Butcher, who was introduced as a witness for plaintiff, testified that he made the trip in his Chevrolet sedan; that the glass in the right rear door had been broken out; that it rained all the way; and that the wind was blowing the rain from the south, the inference being that it was blowing in on her.

We quote from the testimony of plaintiff as follows:

"Q. Now then, the only rain you got on you was the rain crossing the pike from the other side to this place? A. I come back across to the car. That was a Ford touring car that this man carried me in and it didn't have any curtains on it and the dampness was blowing in on me all the way to Mulloys."

From the foregoing testimony it will be observed that plaintiff and her witness Butcher are in conflict as to the make and type of car she occupied on the trip to Mulloys Station.

Dr. R. L. Richardson, introduced by plaintiff, testified as follows:

"Q. Will you state to the Court and jury just what her condition was, your treatment and results? A. I was called to her home, I think it was on May 23, 1937, and I found she was suffering from exposure, extreme nervousness and shock and she said she had gotten wet or exposed, and, of course I went back to see her the next day and the following day she developed a temperature of about 102° and it lasted for several days, and under frequent examinations, general physical examination I found after her temperature subsided that her urine con-

tained sugar giving evidence of diabetes. She had had a previous physical examination several weeks before that but the urine contained no sugar and her general physical condition was perfect.

"By the Court: Q. Is diabetes something that comes on progressively or something that will develop pretty quick? A. It develops quickly following exposure—exposure, nervousness, infectious diseases. It comes rather as a complication or sequel to any disease."

Dr. Holland M. Tigert, introduced by defendant, after stating the known causes of diabetes, gave this testimony:

"Q. Now, Doctor, I want to ask you if influenza or a severe cold, or being exposed to dampness, can cause diabetes? A. No sir, it cannot. There is no substantial support for an infectious theory of true diabetes, and that is the holding of everybody that knows anything about it."

Taking the medical testimony as a whole, it is doubtful whether there is any testimony to support the theory of plaintiff that she contracted diabetes as the result of her exposure in driving through the rain from Ellen Inn to Mulloys. But assuming that she did, and that the defendant was liable in damages for not stopping the bus at Mulloys and affording plaintiff an opportunity to alight therefrom, the question to be determined is whether such failure was the proximate cause of her injury.

■ The general rule seems to be that it is the duty of the carrier to stop its train or car at the station to which the passenger has a ticket and safely discharge him. 13 C. J. S., Carriers, sections 654, 1224, 1225; 10 C. J., 824, and cases cited in notes to texts; and also cases listed in annotation in 58 A. L. R., beginning on page 1064. The rule is thus announced by the Supreme

Court of Albama in the recent case of *Central of Georgia R. Co.* v. *Smith*, 217 Ala., 501, 117 So. 74, 76, 58 A. L. R., 1058, 1060:

"The carrier's duty, as a general rule, is fully discharged when it carries the passenger safely to the contract destination on time, and, after giving reasonable notice that it has reached such destination, stops at the fixed place for passengers to disembark and remains standing a sufficient length of time for them to safely alight."

In that case the authorities are also cited and the rule announced that the carrier is under no duty to give a passenger personal notice that his particular station has been reached, and that a promise by the conductor of the train to notify a passenger personally of the arrival of the train is not binding on the carrier, with certain exceptions in respect to the age or physical infirmity of the passenger, and notice of such condition brought home to the agent in charge of the carrier's vehicle.

As previously stated, Mulloys Station was a definitely known place to the operator of the bus, he had received the plaintiff's ticket to that station, and had he announced the station so as to be heard by plaintiff and stopped his vehicle there, as was his duty, the injury which plaintiff suffered would probably not have occurred.

██ Under the facts of this case we think the general rule with respect to public carriers should apply.

██ The question of proximate cause of such an injury as that suffered by plaintiff is one of serious difficulty. This court, in *Chattanooga Light & Power Co.* v. *Hodges*, 109 Tenn., 331, 70 S. W., 616, 617, 60 L. R. A., 459, 97 Am. St. Rep., 844, after stating that no branch of the subject of personal injuries presents greater difficulty,

and that each case must be left to the sound judgment of the court, adopted the following general rule, to-wit:

"In *Deming* v. *Cotton Press Co.*, 90 Tenn., [306], 353, 17 S. W., [89], 99, 13 L. R. A., 518, this court said: 'The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not happened, the injury would not have been inflicted.' This definition was approved in that case, and in the later cases of *Telegraph Co.* v. *Zopfi*, 93 Tenn., 369, 24 S. W., 633; *Railroad Co.* v. *Kelly*, 91 Tenn., 699, 20 S. W., 312, 30 Am. St. Rep., 902, 17 L. R. A., 691; and *Anderson* v. *Miller*, 96 Tenn., 35, 33 S. W., 615, 31 L. R. A., 604, 54 Am. St. Rep., 812.

"In each of these cases, while the injury complained of was not the necessary effect of the particular act of negligence held to be the proximate cause, yet it was the natural result, and one which, in the face of human experience, might well have been anticipated as possible, if not probable. In all of them the principle recognized was that a wrongdoer is liable not only for the injury which immediately results from his act, but for such consequential injuries as, according to the common experience of man, were likely to result.

"But the consequential injury, according to the authorities, must be natural, 'following upon the original wrongful act, in the usual, ordinary, and experienced course of events.' *Wiley* v. *Railroad Co.*, 44 N. J. L., [247], 248; [*Milwaukee & St. P.*] *Railroad Co.* v. *Kellog*, 94 U. S., 469, 24 L. Ed., 256. But it is to be observed that the result will not be unnatural, so as to relieve the original wrongdoer of responsibility, because he did not foresee or contemplate the precise consequence of his mis-

conduct. It will be sufficient to fix liability on him if the particular result is one naturally connected, either immediately or through a series of events, with the original wrongful act. Wats. Dam. & Pers. Injuries, section 145.

"On the other hand, where the result is such that no reasonable man would expect it to occur, and no knowledge is shown in the person doing the negligent or wrongful act that such a state of things exists as to make the damage probable, we think the rule is that the injury will not be regarded as actionable as against the wrongdoer. *Sharp* v. *Powell*, L. R., 7 C. P., 253."

This question was very fully considered by the Court of Appeals in *Yarbrough* v. *L. & N. R. R. Co.*, 11 Tenn. App., 456, 469, in which petition for writ of *certiorari* was denied by this court, and the same rule was adopted and expressed in this language:

"The injury complained of need not be the necessary effect of the particular act of negligence held to be the proximate cause, but it must be the natural result, and one which, in the light of human experience, might well have been anticipated as possible, if not probable. The principle is that the wrongdoer is liable not only for the injury which immediately results from his act, but for such consequential injuries, as, according to the common experience of men, were likely to result. *Chattanooga Light & Power Co.* v. *Hodges, supra* [109 Tenn., 331], pp. 338-339 [70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844]."

Upon the question of proximate cause in this class of cases the annotator of A. L. R., vol. 118, page 1327, states that the decisions are evenly divided. He then lists the cases supporting both views, and concludes by saying that no exact rule for determining when causes are

proximate and when remote has yet been formulated, but that each case must depend upon its own particular facts.

This court, in *Louisville N. & G. S. Railroad Company* v. *Fleming,* 82 Tenn. (14 Lea), 128, adopted an intermediate rule which has never been departed from, and which is just and fair. In that case an aged and partially paralyzed negro, who had purchased a ticket from Franklin to Nashville, was wrongfully put off the train at Brentwood on a cold and snowy night, which was about nine miles from his destination. He thereupon walked to Nashville, the exposure resulting in sickness and injury. There was a judgment for plaintiff. In reversing the case, this court said:

". . . Whether damages are proximate or remote is a question for the jury, under proper instructions. And an important element in arriving at a correct conclusion is the conduct of the plaintiff subsequent to the wrong complained of, for it is his duty to see that as little injury follows the act as possible, and if by ordinary care a particular injury may be avoided, he cannot hold the wrongdoer responsible. Thus, where a railroad train failed to stop, as it should have done, at a particular station where the plaintiff was waiting to go on board, and the plaintiff walked home, a distance of several miles, through the cold, whereby he incurred serious sickness, it was held that the act of walking home was as disconnected from the wrong of the company as would have been a loss by robbery: [*Indianapolis, B. & W.*] *Railroad Company* v. *Birney,* 71 Ill., 391. A company in giving its servants instructions to put off a passenger at a regular station, and the servant in executing his duty can scarcely be held liable for a personal injury to the passenger from his own voluntary act of walking home or to his destination, no matter how distant, or how in-

clement the weather may be, unless, indeed, the jury in view of all the circumstances should find that such a course was inevitable, or such as an ordinary prudent man would resort to, and as the employes of the company who were immediately instrumental in the wrongful act, from their knowledge of the circumstances, might reasonably have foreseen. The station at which the plaintiff was removed was the most important station between Franklin and Nashville, a small village with a depot building and thirty or forty houses, many of them occupied by persons of the plaintiff's race and color. The injury, if any, occasioned by the walk to Nashville would not be the proximate result of the removal from the cars at such a station, unless the plaintiff could show that he made reasonable efforts to avoid the walk and consequent exposure by applying for shelter or conveyance, and failed therein. And if the failure of such efforts was due to the negligence of the plaintiff in not having money with him to pay for the accommodations asked for, it would be for the jury to say whether the walk was not the result of such negligence rather than the proximate consequence of removal from the cars.''

■ Applying the principle of that decision to the facts of this case, it is apparent that the injury to plaintiff, if any, occasioned by the ride from Ellen Inn to Mulloys Station was not the proximate result of the carrier taking her beyond her destination, unless she can show that she made reasonable efforts to avoid the ride and exposure and failed therein; or, as stated in the foregoing opinion, ''an important element in arriving at a correct conclusion is the conduct of the plaintiff subsequent to the wrong complained of, for it is his duty to see that as little injury follows the act as possible, and if by ordinary

care a particular injury may be avoided, he cannot hold the wrongdoer responsible.''

■ In the present case plaintiff left Ellen Inn between seven and eight o'clock. According to her testimony, she was in a building protected from the weather. She had a pass back to Mulloys Station. All she had to do was to wait from three to four hours for the bus. But she was restless and anxious to get to her destination. In this situation she left a place of safety and took the risk of contracting illness, according to her testimony, by riding seven miles in an open car in the rain. This was wholly unnecessary, and, in our opinion, her conduct in this regard was the proximate cause of her illness.

We have found no case in which the facts are similar to those presented in this record.

If plaintiff upon leaving the bus at Ellen Inn when it was raining, had been unable to find shelter to protect her from the weather, and in that situation had hired Mr. Butcher to drive her to her destination, the result might be different. But that is not this case; she was comfortably housed, but became impatient, and rather than wait three or four hours for the bus, hired a private conveyance to transport her to Mulloys Station and was injured. In these circumstances we conclude that the defendant should not be required to respond in damages.

■ While ordinarily it is for the jury to determine the proximate cause of an injury, yet where the facts are not controverted, the question of proximate or intervening cause is for the court. *Chattanooga Light & Power Co.* v. *Hodges, supra.*

It is patent from the record that the trial court was satisfied that a particular witness introduced by the de-

fendant was testifying falsely, and the court unquestionably so impressed the jury by giving this instruction:

". . . When a witness comes in here to the stand and the accident has happened months ago, we will say, and he undertakes to give every detail and every circumstance of the transaction as to where people looked and where they sat—they are things that you will take into consideration as to whether or not you are going to believe the testimony of such a witness.

"Perjury, gentlemen is one of the most hideous things that is known to a Court. A thief is by far a better citizen than a perjurer. The thief may commit acts to satisfy his appetite, maybe, the means to get substance for somebody that he loves, but the perjurer is one who willfully, maliciously, premeditatedly, and thoughtfully comes into a Court of Justice and swears things falsely for perhaps a piece of silver that he maybe does not need."

The Court of Appeals very properly held this to be error, but concluded that it could not have affected the verdict. We cannot agree to this conclusion. There is no doubt in our minds as to the identity of the witness the court had in mind, and we are satisfied the jury understood who the court had reference to. This was equivalent to the court saying to the jury that this particular witness should not be believed, which was a usurpation of the province of the jury.

For the reasons stated herein the judgments of the Court of Appeals and of the trial court will be reversed and the case remanded for a new trial.

This case having been prosecuted by the plaintiff on the oath provided for poor persons, the defendant will be taxed with so much of the costs of the appeal as accrued at its instance, with judgment over against the plaintiff for all costs of the appeal.