JOHNNY DAVENPORT, Plaintiff in Error, v.
CHARLES ROBBINS and WIFE, Defendants in Error.
—370 S. W. (2d) 929.

Eastern Section. April 24, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Phillips & Hale, Rogersville, for plaintiff in error.

Henry R. Price and Thomas H. Rogan, Rogersville, for defendants in error.

McAMIS, P. J.   Charles Robbins and wife brought this action against Johnny Davenport to recover for the death of their son James Robbins who was killed at the age of five years as the result of a collision between the automobile of Davenport, operated by him, and a sled on which James Robbins was sleigh riding.

There was a verdict and judgment in favor of the plaintiffs for $12,500 from which defendant Davenport prosecutes the present appeal. The first assignment makes the insistence that there is no material evidence of negligence in the operation of the car and that the court should have directed a verdict for defendant because the mother was guilty of proximate contributory negligence as a matter of law in allowing her son to sleigh ride on a public street. This assignment requires an outline of the proof.

The factual background is accurately stated in defendant's brief from which we quote:

"The plaintiffs reside in Rogersville, where Mr. Robbins is employed by the Holston Electric Cooperative. They are the parents of three children, Donna age 9, Chuck age 7, and Jimmy age 5.

"Their residence house is on Douglas Drive in Rogersville, which runs generally east and west, and parallel and to the south of McKinney Avenue. Douglas Drive and McKinney Avenue are connected by Ayers Street, which runs down hill from Douglas Drive into McKinney Avenue, where it dead ends. The home of Mr. and Mrs. Robbins is one door to the east of the intersection of Ayers Street with Douglas Drive.

"On the morning in question, Mr. and Mrs. Robbins had entertained house guests who had been with them over the week end.

"Their children had spent the night with their grandmother, and the next morning, Mr. Robbins left for work at about 8:00 o'clock. When he left for work, both Douglas Drive, the street upon which he lived, and Mc-

Kinney Avenue, the parallel street to the north and below Douglas Drive, were both clear of ice and snow. However, the intersecting street, Ayers Street, which was the nearest down-hill slope to his home upon which any sledding could be done, was virtually covered with ice and snow.

"When Mrs. Robbins left the home at a later hour, so as to go to a restaurant for breakfast with their house guests, she travelled westerly on Douglas Drive to a street called Colonial Road, using that means to get away from their residence house, and avoiding Ayers Street because it was covered with snow and ice.

"About 9:00 o'clock, Mrs. Robbins picked up her three children from the home of their grandmother and took them on up to their own home, where the youngest, James, and the oldest, Donna, watched television, while Chuck, age 7, went out for sled-riding. This was a Monday, but school had not taken up that day, because of the condition of the country and county roads.

"James Robbins stayed in the house a little over an hour, and then decided he wanted to go out and play with his brother and a friend of the brother's named Larry Carroll. Mrs. Robbins dressed him in a red carcoat which came almost to his knees, and red boots which also almost came to his knees, and let him out of the house. Mrs. Robbins had seen her oldest son with the Carroll boy out in her back yard, sled riding. A few moments after letting Jimmy out of the house he came back to the front door of the home, complaining of the fact that the two older boys would not let him ride on the sled.

"At that time, the two older boys were using Ayers Street as their sled run, and had made at least five trips down Ayers Street toward McKinney Avenue, running the sled off into a ditch, before reaching McKinney Avenue.

"They were terminating their sled runs in the yard of neighbors who lived on the northwest corner of the intersection of Ayers Street with McKinney Avenue.

"When little James Robbins went to the house, he rang the front door bell, and this signal was answered by Mrs. Robbins.

"When Jimmy complained of the fact that the older boys would not let him ride the sled, Mrs. Robbins told him that he could do so, and to tell his seven year old brother to let Jimmy ride.

"When Mrs. Robbins first let Jimmy out of the house, he was let out of the front of the house, rather than the rear, and when he returned to the home to make his complaint, he returned to the front door. And during all that time, Mrs. Robbins had sure and certain knowledge that Ayers Street, where the older boys were then sled riding, was covered with snow and ice.

"After telling Jimmy he could ride on the sled, and without ascertaining where the riding was to be done, Mrs. Robbins went on about her housework, and was informed a short time later of the accident in which her child was involved.

"In the meantime, when little Jimmy got instructions from his mother, to relay to his brother, to the effect that he could ride the sled, he went back to the crest of Ayers Street, and told his brother and the little Carroll boy

that his mother had said he could ride the sled. He was then allowed to get on the sled, and to go down Ayers Street toward McKinney Avenue, where the accident occurred, and by reason of Ayers Street being down hill all the way from the top down to McKinney Avenue, and by reason of its being mostly covered with ice, Jimmy, riding the sled on his stomach with his head to the front, was going at a fast speed by the time he got to the bottom of Ayers Street at the intersection of McKinney Avenue.''

Defendant testified that he approached the intersection on McKinney Avenue at a speed of 20 to 25 miles per hour; that he never saw the Robbins child before the accident and that the first he knew that an accident had occurred was when he heard a thump against the side of his car. He had seen no children sledding on Ayers Street but admitted having seen children sleigh riding on other streets in Rogersville. He says the sled on which the deceased boy was riding was painted red and that after the accident he found some red paint about two and one-half feet above ground near the center of the right front door of his car which he later pointed out to plaintiffs.

Larry Carroll who had been riding the sled testified that he saw the sled going northwardly toward the intersection at a point 51.5 feet south of the intersection and that defendant's car was then west of the intersection at a point shown by other proof to be 239 feet from the intersection. According to this witness the right front wheel of the car struck the guider of the sled and knocked the sled eastwardly on McKinney Avenue but toward the south side of McKinney Avenue.

It appears from photographs in the record that McKinney Avenue is practically level and that there is nothing to obstruct the view of a driver approaching the intersection from the west except the Martin residence which is located well back from both streets.

■ If the jury believed the testimony of Larry Carroll it could have found that the sled was in front of the car when struck. If so, in view of the clear and unobstructed view of the intersection from the west, the jury could reasonably conclude that if defendant had been upon the lookout he could and should have seen the sled before it became an obstruction and, in view of his slow speed, could have checked the speed of his car to allow the sled to pass in front of it. Thus, the questions of negligence and proximate cause were for the jury.

In Hadley v. Morris et al., 35 Tenn.App. 534, 249 S.W. (2d) 295, the defendant driver failed to observe a boy running across the highway until he stepped on the pavement just before being struck by the car. The reason offered for not sooner observing the child was the presence of two road graders which distracted the defendant's attention. The Court cited and quoted from Harris v. Miller, 24 Tenn.App. 332, 144 S.W.(2d) 7, as follows:

"It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side. He is not required to turn his head at every private driveway as he passes upon a public thoroughfare, in anticipation that some person or loose horse will run out upon a city street. It is sufficient if the driver sees what falls within his side view of his lookout ahead."

The Court then said:

"We think it was for the jury to say whether Mr. Morris was negligent in paying such close attention to the road grader he was in the act of meeting and passing that 'his attention was momentarily distracted from the view straight ahead; how far away he was from the point of impact when he should have seen the boy; how far the boy was from the road when he should have been seen by the lateral vision of Morris; when he should have anticipated the boy was going to run upon the road, etc.

"It is a matter of common observation that children play and run on and about an unfenced lawn abutting on a road or a street without necessarily getting on the road proper. A motorist must be on guard for such situations, but he is only required to exercise ordinary care under the circumstances to discover the peril and to strive to avoid injuring a child or an animal which does run on to the road."

In this case there was nothing to obstruct the driver's view of the intersection and the approach of Ayers Street from the south. In contrast to the Hadley case, there were no other vehicles distracting the driver's attention. And in that case the driver, despite the distraction of two road graders, saw the child before he was struck though not soon enough to avoid the accident. Even under those circumstances the question of the driver's negligence was held to be a question for the jury. In this case defendant admits that he did not see the child at all and we think whether he was negligent in failing to maintain a proper lookout and whether that was the proximate cause of the accident were properly submitted to the jury.

In Hale v. Rayburn, 37 Tenn.App. 413, 264 S.W.(2d) 230, the failure of the driver to see a pedestrian soon enough to enable him to check his car and avoid the accident was held to make the driver's negligence a question for the jury, despite evidence of other vehicles on the highway. Other cases of similar import could be cited as sustaining the action of the Court in this case in not directing a verdict for defendant on the issues of negligence and proximate cause.

We are also of opinion the court was correct in not directing the jury to find for defendant because of the mother's alleged contributory negligence. Mrs. Robbins testified that she had seen Chuck Robbins and Larry Carroll riding the sled in her back yard and that when she told the deceased boy he could ride she was not aware that the other boys had moved the sled to Ayers Street. Even though she knew, as she admits, that Ayers Street was covered with ice and snow whether she should have anticipated that the sled would be moved there presented a question for the jury.

"Where the evidence is in conflict, or, as here, where different conclusions might reasonably be drawn therefrom, questions of negligence and contributory negligence are for the jury. McBroom v. S. E. Greyhound Lines, 29 Tenn.App. 13, 193 S.W.(2d) 92; Campbell v. Campbell, 29 Tenn.App. 651, 199 S.W.(2d) 931. Likewise, questions of ordinary care and proximate cause are for the jury. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S.W.(2d) 512, 127 A.L.R. 1378; Campbell v. Campbell, supra; Fields v. Gordon, 30 Tenn.App. 110, 203 S.W.(2d) 934." Hale v. Rayburn, 37 Tenn.App. 413, 264 S.W.(2d) 230.

■ The second assignment is that the Court erred in charging the jury that the principal question for determination was whether the defendant saw the boy on the sled. Looking to the charge it appears that the Court coupled this charge with the charge on other questions such as whether the defendant exercising reasonable care could have seen the boy, whether he was keeping a proper lookout and had his car under such control that it could have been stopped. Taken in context we can not say this portion of the charge was erroneous.

■ Under the third assignment of error it is insisted the Court erred in charging that the sled on which the deceased was riding is a vehicle within the meaning of T.C.A. sec. 59-828(b) providing:

"When two (2) vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

In support of this insistence defendant relies upon T.C.A. sec. 59-801 defining a vehicle as:

"Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks."

Webster's Dictionary defines "vehicle" as:

"Any device on wheels or *runners* for conveying persons or objects, as a cart, *sled,* automobile, etc. Any means of carrying, conveying, or communication." (Italics ours)

Thus a sled is a vehicle controlled by T.C.A. sec. 59-828(b) unless it falls within the statutory exclusion of

"devices moved by human power or used exclusively upon stationary rails or tracks." A sled is not used exclusively, if at all, on stationary rails or tracks and, while the question is not free from doubt, we are of opinion it is not to be classified as a device moved by human power while sliding by force of gravity on snow and ice and not being pulled by a person.

■ ■ The Legislature will not be held to have intended to depart from the generally accepted meaning of a term used in a statute in the absence of a contrary showing. Nashville Elec. Service v. Luna, 185 Tenn. 175, 204 S.W.(2d) 529; Nashville Gas & Heating Co. v. Nashville, 177 Tenn. 590, 152 S.W.(2d) 229. Unless to do so seems to violate settled rules of construction, leads to an absurdity or defeats the apparent overall purpose of the statute, words selected by the legislature are generally to be given their ordinary and natural meaning. Roberts v. Cahill Forge, etc., Co., 181 Tenn. 688, 184 S.W.(2d) 29; Moto-Pep, Inc. v. McGoldrick, 202 Tenn. 119, 303 S.W.(2d) 326.

If the construction of the statute, contrary to what has been said, was erroneous it does not affirmatively appear that it was prejudicial, especially in view of the Court's charge that the principal questions were whether defendant saw the child and whether he had his car under proper control. T.C.A. sec. 27-117.

■ Defendant's final insistence is that the Court erred in admitting over his objections two photographs of the intersection taped together end to end to give a composite view of the intersection. There is evidence that some inaccuracy may have resulted from taking them without moving the camera and taping them to-

gether in the manner shown. However, there is other evidence that the two pictures so combined fairly portrayed the situation at the intersection. We think the objection went to the weight of this evidence rather than to its admissibility.

We find no error and it results that all assignments are overruled and the judgment affirmed.

Avery, (P. J. W. S.), and Cooper, J., concur.