DR. C. E. TUBB et al., Plaintiffs in Error, v. W. S. BOYD, Defendant in Error.

and

DR. C. E. TUBB et al., Plaintiffs in Error, v. WALTER BAXTER BOYD, by Next Friend, Defendant in Error.

Middle Section.   May 23, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

O. K. Holladay, of Cookeville, and Malcolm C. Hill, of Sparta, for plaintiffs in error, Tubb.

Seth M. Walker and John J. Hooker, both of Nashville, for defendants in error, Boyd.

CROWNOVER, J. These two actions grew out of the same accident and were tried together on the same evidence in the court below.

The second action above styled was brought by Walter Baxter Boyd, by his next friend, W. S. Boyd, against Dr. C. E. Tubb and J. R. Tubb, Sr., for damages for personal injuries averred to have been negligently caused by defendant, Dr. C. E. Tubb, in driving an automobile against plaintiff below on one of the streets of Sparta. The automobile was owned by J. R. Tubb, Sr., who was the father of Dr. Tubb.

434

In the first action above styled, W. S. Boyd, the father of Walter Baxter Boyd, sued for loss of services of his son and for expenses of medical treatment.

The defendants pleaded not guilty.

At the close of plaintiffs' proof, and again at the conclusion of all the evidence, the defendants moved for directed verdicts, which motions were overruled.

The jury returned verdicts of $1250 in favor of the plaintiff Walter Baxter Boyd, and $750 in favor of the father, W. S. Boyd.

Defendants' motions for a new trial and in arrest of judgment having been overruled by the court, they have appealed to this court and have assigned seventeen errors, which are, in substance, as follows:

(1) The court erred in overruling defendants' motions for directed verdicts, as there was no evidence to support the verdicts in favor of the plaintiffs.

(2) Walter Baxter Boyd was guilty of contributory negligence that barred recoveries.

(3) The trial court erred in its charge to the jury, that

"There is a presumption in law that a child under six years of age, for want or lack of capacity, when injured is not guilty of contributory negligence." . . .

"In this connection I charge you that the burden is on the defendants to show (1) that plaintiff Walter Baxter Boyd was capable of being guilty of contributory negligence, and (2) that he was guilty of such negligence."

(4) The court erred in refusing to charge defendants' special request, as follows:

"If you should find that W. S. Boyd was sending his five year old boy to school without instructing him to be careful and that he knew and permitted his boy to go to school, without sending someone with the child to look after its safety when traveling along and across streets of the town of Sparta where many vehicles and automobiles were traveling, he. in so permitting his son to so go upon the streets without advice or attendance for his safety, was guilty of contributory negligence which proximately contributed to the injury of his son, and plaintiffs would be entitled to no recovery and your verdict should be for the defendants."

(5) The court erred in permitting the plaintiff, W. S. Boyd, to testify, over seasonable objections made by the defendants, as original proof in the case and before the defendant, Dr. C. E. Tubb, was introduced as a witness, in substance, that several days after the accident he had talked with Dr. Tubb who had told him that he was running his car about twenty-five miles an

hour at the time of the accident and was not looking at the boy at the time the collision occurred, but was looking at another boy on the pavement.

(6) The court erred in refusing to give in charge to the jury defendants' special request which is as follows:

"I charge you that the testimony of witnesses that the defendant made certain statements after the accident, but not at the time or scene of the accident, which contradict the testimony of the defendant, cannot be looked to as proof of that fact, but only to contradict the defendant as a witness, and you will so consider it."

(7) The court erred in charging plaintiffs' special request as follows:

"Statements of the defendant, Dr. Tubb, alleged to have been made to others as to how the accident occurred or what he was doing at the time, are competent evidence for your consideration and may be looked to for two purposes, (1) as substantive evidence of whether the statements are true or untrue, and (2) as reflecting and shedding light upon the credibility of said defendant in determining what weight should be given his testimony."

(8) The court erred in refusing to charge defendants' special request as follows:

"The court is especially requested to charge the jury that the law imposes on the plaintiffs in this case, being a suit for injuries caused by negligence, the burden of showing by the preponderance of the evidence that Dr. Claude E. Tubb. was negligent in the way be operated his automobile and that his negligence was the cause of the injury to the boy, Walter Baxter Boyd."

(9) The court erred in refusing to charge defendants' special request as follows:

"If you should find from the proof that the boy Walter Baxter Boyd ran into the side of the car that the defendant, Dr. Tubb, was driving, and that the collision occurred in this manner, then the plaintiffs in neither case would be entitled to a recovery and your verdict should be for the defendants."

(10) The court erred in refusing to charge defendants' special request, which is as follows:

"Ordinance No. 140, of the town of Sparta, being an ordinance regulating vehicular traffic on the streets of Sparta, is an ordinance purporting to cover an entire subject with reference to the regulation of vehicular traffic on the streets of Sparta, and being an ordinance purporting to cover an entire subject, repealed Ordinance No. 99, and the ordinance

amendatory thereof, being No. 104, and those ordinances, that is, Ordinances Nos. 99 and 104, the amending ordinance offered, are, by the passage of Ordinance No. 140, rendered inoperative during the life or existence of said Ordinance No. 140.''

(11) The court erred in charging the jury as follows:

''I charge you, as a matter of law, that the City of Sparta had provided by Ordinance No. 104, passed in 1915, and fixed as the lawful speed rate at which an automobile could be operated on the streets of such municipality at twelve miles per hour, and I charge you that this was a valid city ordinance, and that its violation is negligence per se; that is, of itself, and will render the defendant liable in damages in this case, provided you find from the evidence, the preponderance of the evidence, that at the time of said collision the defendant was violating ordinance, and provided you further find from a preponderance of the evidence that defendant ‘Dr. C. E. Tubb's negligence in violating said ordinance directly and proximately contributed to said collision.''

(12) The closing argument of plaintiffs' attorney to the jury was very prejudicial to the rights of defendants, ''and this argument insisting that the defendants had statements of Mrs. Hull and Mrs. Snodgrass and that if they were not trying to cover up something from the jury that they should have read them, and the reference to the allowance by the Supreme Court of damages in the sum of $15,000 for a little school girl who had been run over and killed was highly inflammatory, and the admission of this argument was error.''

(13) The court erred in his charge relative to the measure of damages that should be allowed the father, W. S. Boyd, said paragraph of which charge is as follows:

''You will award such damages as will reasonably compensate him for the loss of services of his son, Walter Baxter Boyd, if any, including the depreciation of the ability of said Walter Baxter Boyd to earn money between the date of his injuries and the time he arrives at the age of twenty-one years as a result of said injuries, if any, and also the doctors' bills and other expenses, if any, shown in the proof, incurred by said W. S. Boyd in an effort to minimize or lessen the injuries of his said son, Walter Baxter Boyd.''

(14) The verdict in favor of W. S. Boyd was so excessive as to indicate passion, prejudice or caprice on the part of the jury.

Walter Baxter Boyd was five years and eleven months of age on the date of the accident, February 20, 1928. He attended the first grade of the city school of Sparta, and resided with his parents on the Bronson Road, west of Main Street.

The school children who lived on the west side of town, among them a number of kindergarden and first grade children, were in the habit of crossing North Main Street in two places, one at the top of the hill at an alley that leads from Main Street to the school house, and one at the foot of the hill, north of this alley. Their regular routes were at these crossings.

Between 11:30 and 12 o'clock in the day, the children of the second division of the first grade were going to school, as their classes began at 12 o'clock noon, and there were a number of young children on Main Street at that hour.

Dr. Tubb, one of the defendants in this case, lived on North Main Street, about one block from this crossing, and his office was on the same street, a short distance in the opposite direction.

Dr. Tubb resided with his father, J. R. Tubb, Sr., who owned the Chrysler automobile driven by Dr. Tubb, involved in this case, which automobile he permitted his son as a member of his family to use for pleasure and for his professional visits.

On this date, February 20, 1928, between 11:30 and 12 o'clock, Walter Baxter Boyd and a little boy named Walker were going to school. They climbed on the back end of a wagon drawn by horses, that was traveling south on North Main Street, and were standing on the coupling pole holding on to the wagon bed. When they reached the foot of the hill, at one of the crossings above mentioned, where they usually crossed Main Street, the Walker boy jumped off and ran across to the sidewalk on the east side of Main Street. Later, Walter Baxter Boyd jumped off and started to run across the street. Dr. C. E. Tubb was driving north on Main Street, going home to lunch at 12:00 o'clock. As Walter Baxter Boyd ran across the street he was struck by the automobile driven by Dr. Tubb, and was knocked down and rolled over several times, as the result of which his right leg was broken about half way between the hip and the knee, his mouth was cut, his nose injured and one tooth knocked out.

1-2. The first and second assignments of errors, to the effect that the court erred in not directing a verdict for the defendants because there was no evidence to support the verdicts for the plaintiffs and that the plaintiff, Walter Baxter Boyd, had been guilty of contributory negligence sufficient to bar recoveries, are not well taken and must be overruled. Plaintiffs' proof is that defendant, Dr. C. E. Tubb, was driving at a rate of speed in excess of the legal rate for the town of Sparta, and struck the child with the bumper of his car, inflicting the injuries sued for. The defendants' contention is that the child ran into the side of the automobile, struck the fender and was knocked down, and that his injuries were the result of his fall. There is a conflict between the testimony of

the plaintiffs and the defendants on every fact necessary to establish negligence on the part of the defendant, and contributory negligence on the part of Walter Baxter Boyd. Therefore, the case was properly submitted to the jury and the trial judge was correct in overruling the motions for a directed verdict. According to the admissions of Dr. Tubb to parties out of court he was looking at another boy on the sidewalk and did not see the child he injured until the impact occurred, and he stated that he was running about twenty miles per hour. This was in violation of the ordinance confining the speed of automobiles to twelve miles per hour. The question of the plaintiff Walter Baxter Boyd's contributory negligence in riding on the rear end of a vehicle and in crossing the street in the middle of a block in violation of the ordinances, was submitted to the jury, which found in favor of the plaintiff. Hence the first and second assignments of the plaintiffs in error must be overruled.

3. This assignment is that the court erred in his charge to the jury that there is a presumption that a child under six years of age, for want of or lack of capacity, is not guilty of contributory negligence, and that the burden was on the defendants to show that the plaintiff was capable of being guilty of contributory negligence, and was guilty of contributory negligence, is not well made and must be overruled. This proposition was thoroughly reviewed in an opinion of this court filed on July 26, 1930, at Nashville, in the case of J. J. Taylor et al., v. L. C. Robertson, Administrator, 12 Tenn. App., 320. The court's charge in this case was in accordance with our holding in that case, and it is not necessary for us to further review the question.

4. The assignment that the court erred in refusing to charge defendants' special request that W. S. Boyd was guilty of contributory negligence in sending his five year old boy to school unaccompanied by another, is not well made and must be overruled, for the reason that it contained incorrect propositions of law. This request was inaccurate in that the effect of it was to invade the province of the jury by instructing them, first, in the language: "He, in so permitting his son to go upon the streets without advice or attendance for his safety, was guilty of contributory negligence, which proximately contributed to the injuries of his son." The question of the father's contributory negligence was for the jury to determine, and was not a question of law for the court to pass on by unqualifiedly saying that the plaintiff, W. S. Boyd, was guilty of contributory negligence. And, second, because this special request embodied the statement that: "Plaintiffs would be entitled to no recovery, and your verdicts should be for the defendants." Which was not correct in that this language instructed the jury that the

contributory negligence of the father, W. S. Boyd, was attributable to his son, Walter Baxter Boyd, and that if the father, W. S. Boyd, was negligent, the son, Walter Baxter Boyd, could not recover. R. R. v. Howard, 112 Tenn., 107, 78 S. W., 1098. Hence this assignment must be overruled.

5-6-7. These assignments go to the propositions that the court erred in permitting the plaintiff, W. S. Boyd, to testify as original proof in the case and before the defendant, Dr. C. E. Tubb, was introduced as a witness, in substance, that he had a conversation with Dr. Tubb, who stated that he was not looking at the boy at the time the collision occurred but was looking at another boy on the pavement, and that he was running about twenty miles per hour; and that the court further erred in charging that said evidence was competent as substantive evidence and also as reflecting upon the credibility of the defendant in determining what weight might be given his evidence, and in refusing to charge defendants' special request that said evidence could not be looked to as proof of facts but only to contradict the defendant as a witness. These assignments are not well taken and must be overruled for the reason, first, the record does not show that any exception was made at the time, or that any other exception was made to this particular testimony; second, because the evidence was admissible as substantive evidence, and also as reflecting upon the credibility of Dr. Tubb as a witness. We held in an opinion by Judge DeWitt, filed on April 14, 1931, in the case of Street v. Dunn, Administrator, Dickson County Law, that a statement of the defendant is substantive evidence, and is some evidence on which to base a verdict. 6 Jones on Evidence, 2 Ed., 4764-5, sec. 2412; 30 Am. & Eng. Ency. of Law, 2 Ed., 1124-5; 22 C. J., 297, sec. 324. It is an admission of a party to the suit against interest, and is admissible in chief or in rebuttal. See State v. Davis, 104 Tenn., 508, 58 S. W., 122; 22 C. J., 297- 8, sec. 324. And is admissible for the purpose of contradiction. 40 Cyc., 2687.

8. The assignment that the court erred in refusing to charge defendants' special request to the effect that the burden of proof was on the plaintiffs to show by a preponderance of the evidence that Dr. Tubb was negligent in the way he operated his automobile and that his negligence was the cause of the injuries, is not well taken and must be overruled, for the reason that the court fully covered the law on this subject in his charge to the jury.

9. The assignment that the court erred in not charging defendant's special request that if the proof showed that the boy, Walter Baxter Boyd, ran into the side of the automobile, then neither plaintiff could recover, is not well made and must be overruled for the reasons, first, that it does not contain an accurate statement of the law. Our Supreme Court held in the case of Carney v. Cook, Admrx., 158

Tenn., 334-5, 13 S. W. (2d), 322, that it was immaterial whether the automobile struck the boy or whether he ran into the side of the automobile, where he was injured by the reckless and negligent driving of the defendant. Second, the law on this subject was correctly given in charge by the court to the jury in the original charge.

10-11. These two assignments are to the effect that the court erred in charging the jury that the maximum rate of speed for automobiles in the town of Sparta, as fixed by the ordinances, was twelve miles per hour and in refusing to charge defendants' special request to the effect that Ordinance No. 140 repealed the other ordinances as to the rate of speed, which had the effect to fix no speed limit within the town of Sparta, are not well made and must be overruled for the reason that Ordinance No. 140 did not repeal Ordinance No. 104, expressly or impliedly.

It appears that there was an Ordinance No. 99 passed several years ago fixing the maximum rate of speed for automobiles at six miles per hour. Later, Ordinance No. 104 was passed, amending Ordinance No. 99, so as to fix the maximum rate of speed at twelve mile per hour in the City of Sparta, and in the year 1925 Ordinance No. 140, "regulating vehicular traffic on the streets of Sparta," was passed, but it appears that this ordinance is silent as to the speed of automobiles and it does not attempt to repeal any prior ordinances; hence we are of the opinion that this Ordinance No. 140 does not repeal by implication the earlier ordinances establishing twelve miles per hour as the legal rate of speed in the City of Sparta.

"Under the well settled rules of construction concerning repeals by implication, the provisions of the old act not covered or embraced by the provisions of the later act are unaffected thereby and still remain in force. Although there may be two acts upon the same subject, yet the rule is to give effect to both, if possible." Durham v. State, 5 Pickle, 730, 731, 18 S. W., 74; Shannon's Constitution of Tennessee, 253. See West v. State, 140 Tenn., 358, 362, 204 S. W., 994; Life & Casualty Co. v. King, 137 Tenn., 698, 195 S. W. 585; State v. Chadwick, 131 Tenn., 354, 174 S. W., 1144; 43 C. J., 566.

12. We are of the opinion that the assignments which complain of the prejudicial statements made by plaintiffs' counsel in his argument to the jury, are well made and must be sustained. In his closing argument counsel for the plaintiffs below stated:

"Now, Gentlemen of the Jury, my friend Oscar Holladay has stated that we didn't use certain witnesses who were present and witnessed the accident, and asked why we didn't put them on the witness stand. He took the deposition of Mrs. Hickerson. Why has he not read her deposition?

"Excepted to by Mr. Holladay, for defendants, because there is no proof in the record that he had taken said deposition.

"MR. WALKER: 'I say it is in the record that you took her deposition and why didn't you read it to the jury.'

"MR. HOLLADAY: 'I except to that statement and say that is highly improper. The deposition referred to is here and Mr. Walker could have introduced it in evidence if he wanted it introduced.'

"THE COURT: 'Be guarded to stay within the record. The jury knows whether or not that occurred.'

"MR. HOLLADAY: 'We except to the holding of the court.'

"MR. WALKER: 'And Mrs. Hull, where is she, why you have got her statement, and you have got the statement of Mrs. Snodgrass. Well, of course, they don't put them on, and you haven't heard of Mrs. Snodgrass or Mrs. Hull, and no doubt you have forgotten that a Hull or Snodgrass lived, or would have, if it were not for Cordell Hull, who used to be a judge in this Circuit, and old Judge Snodgrass, that used to live here.'

"MR. HOLLADAY: 'That is excepted to, because it is calculated to inflame the jury. If he wanted those statements read, he should have read them, himself.'

"MR. WALKER: 'Why didn't you take the deposition of Mrs. Hull, who you say saw the accident, and Mrs. Snodgrass, who lived there, and in front of whose house it happened, and into whose house the boy was carried after the injury. If you are not trying to cover up something from the jury, why didn't you take these depositions?'

"MR. HOLLADAY: 'That is excepted to. He has no right to make that kind of an argument. These witnesses are just as open to him as to me, and he would have introduced them, I presume, if he had not known that they were against him.'

"THE COURT: 'Counsel will be guarded to argue simply what is in the record.'

"Mr. WALKER: 'Certainly I will and if that is not in the record then I haven't got enough sense to find my way to Nashville this afternoon and am likely to get lost.'

"MR. HOLLADAY: 'That statement of counsel is excepted to. There is no proof of that in the record.'

"MR. WALKER: 'And if that is not in the record, some member of the jury may find me wandering around your chicken house, because I will be lost, and I hope you take me in and don't have me arrested for stealing chickens, because it will just be because I am lost and haven't got enough sense to find my way home.'

"MR. HOLLADAY: 'We except to that statement. It is not borne out by any portion of the record or any part of it.'

"THE COURT: 'Counsel will be guarded to stay within the record.'

"MR. WALKER: 'Why certainly, I am staying within the record, and the law gives me the right to argue the facts and they are in the record.'

"Excepted to by the defendants.

"MR. WALKER: 'Gentlemen of the Jury, they even went so far as to say that Walter Boyd was guilty of some kind of negligence because he permitted his son Walter Baxter to go to school with the Walker boy, and Oscar Holladay read from the case of Fox v. Cheek, a Davidson County case. I am familiar with that case and I am familiar with the fact that the jury in that case rendered a verdict for $15,000 against the defendant for the wrongful and negligent killing of a fine little girl who was on her way to school, etc.' ·

"Excepted to by the defendants.

"This exception was sustained by the court.

"During the argument to the jury Mr. Holladay, counsel, for defendant, read from the case of Fox v. Cheek, above referred to, and argued to the jury that W. S. Boyd, the father of the injured child, was guilty of negligence in permitting his child to go to school unattended, according to the law and the facts of said case of Fox v. Cheek, and Mr. Holladay stated to the jury that Mr. Walker was familiar with said case of Fox v. Cheek."

As will be seen from above quotation of the record, this argument was made in reply to some statements made by counsel for the defendants in his argument to the jury, but the statements of counsel for the defendants is not set out in the record other than his reference to the law and the facts of the case of Cheek v. Fox, 7 Higgins, 160; hence it does not appear from the record that there was sufficient provocation for the statements made by counsel for plaintiffs below, as above set out. The record shows that the defendants had taken the deposition of Mrs. Hickerson and a statement of Mrs. Hull, but the record does not show that any statement of Mrs. Snodgrass had been taken, nor does the record show what any of these witnesses saw or knew about the accident. It is highly improper to comment on the failure to call witnesses where the record does not show that the witnesses saw or knew any of the material facts in issue where they are equally accessible to either party, and to say "if you are not trying to cover up something from the jury, why didn't you take these depositions?" especially where the court did not sustain the objection of the counsel. 2 R. C. L., 412, sec. 11; 38 Cyc., 1490.

Reference to verdicts in similar cases and to the amount of damages awarded, and statements that such verdicts had been sus-

tained by the courts, are highly improper, and are usually grounds for reversal, unless it is apparent from the verdict that the jury was not influenced thereby. 38 Cyc., 1497; Pullman Co. v. Pennock, 118 Tenn., 565, 102 S. W., 73; Mfg. Co. v. Woodall, 115 Tenn., 605, 90 S. W., 623; English v. Ricks, 117 Tenn., 73, 95 S. W., 189; Thompson on Trials, secs. 947, 963.

It is immaterial that the objection to the improper statement of the verdicts in other cases was sustained. The jury had been inoculated with the poison of the foreign matter improperly injected into the case, and every lawyer of experience knows the impossibility of removing the impression that has been made. Pullman Co. v. Pennock, supra; Opinion of this Court in the case of Gulf Refining Co. v. Robert V. Frazier, Wilson County Law, filed March 18, 1931.

Of course, improper language used in argument is not a ground for reversal, where such language was provoked by the remarks of counsel for the adverse party, unless it plainly appears the verdict was influenced thereby, especially where the exceptions to the argument were sustained. 38 Cyc., 1501; Jackson v. Pool, 91 Tenn., 448, 19 S. W., 324. But in this case the question of defendants' liability was a sharp issue and one to be left to the jury. If the jury took the plaintiffs' theory it would hold the defendants liable, but if it took the defendants' theory the verdict should have been for the defendants. It is more than probable that the jury gave some weight to the argument of counsel on the proposition that defendants had not taken and read the depositions of these witnesses, and it does not appear that he was warranted in making such statements. The reference to the amount of the verdict in the case of Cheek v. Fox, was improper and we cannot tell how much influence it had with the jury. Counsel could have replied to the argument made by defendants' counsel without stating the amount of the verdict. Hence we are of the opinion that these assignments should be sustained.

13. The assignment that the court erred in his charge to the jury that the plaintiff, W. S. Boyd, might recover such damages as would reasonably compensate him for the loss of the services of his son, including the impairment of the ability of said Walter Baxter Boyd to earn money between the date of his injuries and the time he arrives at the age of twenty-one as a result of said injuries, together with doctors' bills incurred by the father, is not well taken and must be overruled. It is insisted that the trial court should have coupled with the above instructions a statement relative to the uncertainty of life and the uncertainty of the services of the boy, as it was not known whether the services of the boy would be worth anything to the father, and therefore these damages were speculative. This assignment is not well made for two reasons:

first, because the charge was correct as far as it went, and the defendants did not make any special request at the time. The court cannot be put in error in the absence of a request for further instructions in the court below. Grace v. Curley, 3 Tenn. App., 1. Second, a parent may recover for the loss of services of his minor son (46 C. J., 1297, sec. 104), both past and prospective, during minority (46 C. J., 1310), and expenses rendered necessary by the injury. 46 C. J., 1311, sec. 133; Tenn. Cent. Ry. Co., v. Doak, 115 Tenn., 720, 92 S. W., 853; Forsyth v. Central Mfg. Co., 103 Tenn., 497, 53 S. W., 731.

14. The assignment that the verdict in favor of W. S. Boyd was excessive, will not be passed upon by this court for the reason that the cause must be remanded for a new trial, and it would not be proper for us to indicate what we think about it.

Assignment number twelve having been sustained, it results that the judgment of the lower court must be reversed and the actions remanded for a new trial. The cost of the appeal is adjudged against the defendants in error, for which execution may issue, but the cost that accrued in the lower court will not be adjudicated now but will await the final determination of the cause.

Faw, P. J., and DeWitt, J., concur.