# CENTRAL TRUCKAWAY SYSTEM, Inc. v. WALTNER (four cases).—253 S. W. (2d) 985.

Eastern Section.   July 15, 1952.

Petition for Certiorari denied by Supreme Court, December 5, 1952.

204

S. F. Dye, of Knoxville, Ogle & Ogle, of Sevierville, for plaintiff in error.

Fowler, Long & Fowler and Wm. W. Piper, all of Knoxville, for defendants in error.

HOWARD, J. These consolidated tort actions grew out of an automobile accident which occurred on the

Chapman Highway between Knoxville and Sevierville, about 5 miles west of Sevierville, on August 3, 1950, when the automobile owned and driven by the plaintiff, Homer N. Waltner, struck the balustrade of a bridge across the highway. Riding in the car with the plaintiff were his wife, Emma Mae Waltner, age 40, who was killed instantly, and their three minor daughters, Shirley Ann, age 17, who sustained minor injuries, Marilyn, age 15, who sustained a broken hip as well as a brain concussion and cuts about the head· and face, and Delores, age 7, who escaped uninjured. Waltner also sustained serious injuries, including a shattered right knee cap, a broken right arm above the elbow, and a brain concussion which greatly impaired his hearing. He further sustained numerous cuts and bruises about his face and other parts of his body, and the radial nerve which controls the muscles in his right hand was injured, limiting its use. At the time of the accident plaintiff and his family, residents of Canton, Ohio, were on a vacation trip to the Smoky Mountains.

Also involved in the accident was a large truck or automobile carrier 44 feet and 4 inches in length, owned by the defendant, Central Truckaway System, Inc., and driven by one of its employees, Henry C. Willis. This carrier was loaded with 4 new automobiles which were to be delivered to the Ford dealer at Sevierville. Both vehicles involved were traveling in an eastwardly direction, toward Sevierville. The accident occurred about 10:30 A. M. on a clear day, and at the time the pavement was dry. However, the grass on the shoulder of the road was still damp from a shower earlier that morning.

It appears that the concrete pavement of the highway over which the parties were traveling was 20 feet wide,

and that the shoulder of the highway at or near the bridge where the accident occurred ranged in width from 4 to 8 feet, and was solid and flush with the pavement. The width of the bridge was 24 feet, 2 feet wider on each side than the pavement, and the concrete balustrades were about 3 feet high. The accident occurred on a straight portion of the highway estimated in length at approximately 1000 feet, while Waltner was attempting to pass the defendant's carrier. There was no contact between the two motor vehicles and the accident occurred when the left front of plaintiff's car struck the north balustrade of the bridge, completely demolishing the car. There was a white line in the center of the highway dividing the two lanes of traffic, with yellow lines on curves warning drivers not to attempt to pass other vehicles at such points. The yellow line on the west ended approximately 670 feet from the bridge and started again on the east 165 feet therefrom.

In case No. 1144, Waltner individually sued the defendant to recover damages for his personal injuries and medical and hospital expenses for himself as well as for his two daughters; also for the loss of his daughters' services, and for the damages to his automobile.

In case No. 1145, Waltner, in his own behalf and for the use and benefit of his three minor daughters, sued the defendant for the wrongful death of his wife and for the expenses incidental to her burial.

In cases Nos. 1146, and 1147, Waltner, as next friend of his two minor daughters, Shirley Ann and Marilyn, sued the defendant to recover damages for their injuries and suffering.

Each of the four declarations contains several counts, alleging in substance that the driver of the defendant's

truck was negligently and carelessly operating said vehicle prior to and at the time of the accident; that after the plaintiff had sounded his horn and was in the act of passing said vehicle, the driver pulled the tractor part thereof to the left across the white line of the highway onto and into the left lane in front of plaintiff's car, forcing said car into the north balustrade of the bridge, resulting in the injuries and damages complained of; that prior to and at the time of the accident defendant's driver was driving recklessly in violation of Code Section 2681, and did not have said vehicle under proper control; that he drove to the left of the center of the highway without giving any signal of his intention to do so in violation of Code Section 2682, and that the defendant's vehicle prior to and at the time of the accident was being operated at a rate of speed in excess of 40 miles per hour in violation of Code Section 2682.1. All the foregoing Sections refer to Williams' Tennessee Code.

To each of the declarations the defendant interposed a plea of not guilty and filed special pleas in which it was admitted (1) that the carrier belonged to the defendant and was on the defendant's business at the time of the accident, and (2) that the driver was an employee of the defendant. At the conclusion of all the evidence the defendant moved for peremptory instructions in all the cases, which motion was overruled, and the trial resulted in the following jury verdicts: $10,000 for Waltner; $12,000 for the death of his wife; $3,500 for Marilyn, and $1200 for Shirley Ann. Motion for a new trial in each of the cases was made and overruled, and this appeal was granted and perfected. No question is made below and none is made here that the verdicts were excessive.

By assignment 1 the defendant contends there was no evidence to support the verdicts, and that the trial court erred in refusing to direct a verdict for the defendant. While this question involves a review of the evidence, such review is only to determine whether there is any substantial evidence to support the verdicts. Under our decisions we are required to "take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901. Applying the foregoing rule to the facts as they appear in the instant case, we think there was ample evidence to support the verdict.

Reviewing the evidence, Waltner and his two daughters, Shirley Ann and Marilyn, testified that they overtook the defendant's carrier several minutes before the accident and followed it several miles without attempting to pass, because of the curves in the highway; that when they drove out of the curve more than 600 feet west of the bridge they saw that the road was straight for a considerable distance with no approaching traffic, and that Waltner, after sounding his horn, pulled to the left to pass; that when the car got alongside the carrier unit, about the middle, the defendant's driver pulled to the left without giving any warning, crossing over the white center line about 2 feet, forcing Waltner to drive the left side of his car off the pavement and onto the shoulder; that seeing this Waltner again sounded his horn, applied his brakes and slowed down the speed of his car; that after the horn was sounded the defendant's driver pulled back to his side of the road, and Waltner, believing that

the driver had heard the horn proceeded in his efforts to pass; that as the car got alongside the cab of the tractor the defendant's driver again, and without warning, pulled sharply to the left across the center line in front of them; that this action by him blocked the highway and forced their car into the balustrade of the bridge. Waltner stated that when he first saw the bridge he was approximately 500 feet away and that in his efforts to get back onto the pavement, after being forced therefrom, his car slid sideways into the balustrade. He further stated that he was driving at a moderate rate of speed, was looking ahead, and estimated the speed of the defendant's truck at from 40 to 50 miles per hour. The two girls also stated that as they were attempting to pass the defendant's carrier just before being forced off the road, that the carrier got so close to their car they could have reached out the window and touched it.

The plaintiffs introduced two state highway patrolmen who arrived on the scene shortly after the accident, and from their investigation they testified that there were skid marks on the shoulder of the road extending from the bridge west to where the left wheels of the plaintiff's car left the pavement, a distance of approximately 116 feet, and that the grass on the shoulder was damp and slightly slippery because of a rain several hours previously. These patrolmen further stated that the left side of plaintiff's car struck the balustrade just behind the left front wheel, and that it looked like this wheel had knocked off a chunk of the concrete.

The defendant's driver testified that he never saw the plaintiff's car prior to the accident and denied that he forced it off the highway. He said that he only heard a short "beep" of plaintiff's horn which was simultaneous-

ly with the crash, and that plaintiff's car never did get alongside the cab of the tractor; that he did not know plaintiff was following him until he heard the crash and then he looked in one of the rearview mirrors and saw what had happened; that he had previously pulled off the road and stopped, about two miles back, to permit other cars following him to pass in safety. He also denied that he was driving from 40 to 50 miles per hour, and estimated his speed at 30 to 35 miles.

The defendant introduced several witnesses who visited the scene of the accident. Some of these witnesses stated that plaintiff's car skidded as much as 195 feet before it struck the balustrade, and that the body of the car was torn loose from the frame.

As will be observed from the foregoing brief summary of the evidence, there were many conflicts to be reconciled by the jury. There was evidence from which the jury could find (1) that Waltner's car was traveling at a moderate rate of speed, and that he was keeping a proper lookout ahead; (2) that he was attempting to pass the defendant's vehicle at a place of safety; (3) that before starting to pass he sounded his horn; (4) that while he was in the act of passing the defendant's driver negligently drove to the left, forcing his car from the highway; (5) that defendant's driver was driving in excess of 40 miles per hour; (6) that he violated Code Section 2682 by not signaling his intentions; and (7) that his negligence was the proximate cause of the accident.

■ ■ It is earnestly argued that the Court should have directed a verdict for the defendant in the case of Waltner individually, because of his contributory negligence in attempting to pass the defendant's carrier when he could see the bridge and the balustrade ahead;

that had he not been driving at such a high rate of speed he could have stopped his car before striking the balustrade. It occurs to us that this was a question over which there was much controversy, and it was for the jury, under proper charge of the Court, to consider Waltner's contributory negligence, if any, along with the other controverted question. In numerous cases our Courts have held that where there is conflicting evidence, questions of negligence and contributory negligence are for the jury. Tubb v. Boyd, 13 Tenn. App. 432; Duling v. Burnett, 22 Tenn.App. 522, 124 S. W. (2d) 294; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272; McBroom v. S. E. Greyhound Lines, Tenn. App., 193 S. W. (2d) 92; Campbell v. Campbell, Tenn. App., 199 S. W. (2d) 931. Likewise, questions of ordinary care and proximate cause. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 1378; Campbell v. Campbell, Tenn. App., 199 S. W. (2d) 931; Fields v. Gordon, Tenn. App., 203 S. W. (2d) 934.

█ Under the circumstances Waltner had a right to assume that the driver of the defendant's carrier would if he intended to turn to the left, give timely warning thereof. Gary v. Powell, 8 Tenn. C. C. A. 363.

█ By assignment 2 the defendant complains that the Court erred in refusing to direct a verdict on various portions of the declarations, particularly those alleging speed in excess of 40 miles per hour; that there was no proof to support these allegations. We find no merit in this assignment as Waltner estimated the speed of the carrier at from 40 to 50 miles per hour. Furthermore, this was not reversible error as there were other counts in the declarations supported by the material evidence. According to the record the jury returned general ver-

dicts and the rule is well settled that a general verdict is not vitiated by the absence of proof on some counts of a declaration if there is evidence to sustain the averments of a single count. Code Section 8824. East Tennessee, V. & G. R. Co. v. Gurley, 80 Tenn. 46; Tennessee Cent. Ry. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452; Sledge & Norfleet v. Bondurant, 5 Tenn. App. 319; Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219; Taylor v. Cobble, 28 Tenn. App. 167, 168, 187 S. W. (2d) 648.

Under Assignment 3 the defendant contends that the trial court erred in permitting various doctors to testify for and on behalf of the plaintiff over seasonable objections as to consequences which might possibly arise, remain or develop or result from the respective injuries; that said testimony was based on conjecture and bare possibilities rather than upon reasonable certainty and should have been excluded. We find no merit in this assignment as the evidence when offered was objected to by the defendant and the jury was told by the trial judge not to consider same unless supported by other competent testimony. In the absence of a showing to the contrary, we think that it may be assumed that the jury followed the court's instructions. Moreover, the error complained of was only an element of damages to be considered by the jury in reaching its verdict, and had no bearing on the determination of defendant's liability.

Assignment 4 complains of the action of the trial court in permitting plaintiffs to testify over objections that Waltner undertook to pass defendant's truck on two different occasions prior to his arriving at or near the bridge where the accident occurred, and to further testify that on each occasion the driver of the automobile sound-

ed the horn, and that the defendant's driver, without signal or warning, steered the carrier to his left across the center line of the highway; that the above testimony did not conform with the allegations in the declarations. We find no merit in this assignment. The plaintiffs' declarations allege as follows:

"The defendant's vehicle was operated at a high and dangerous rate of speed, * * * and * * * when the plaintiff was about to pass * * * it suddenly and without warning was driven or permitted to pass across the center line of the highway and on to the half along which the plaintiff was planning to travel in passing such vehicle, so that the principal portion of the lefthand side of the above highway was occupied by defendant's tractor, * * * at a point where the tractor was about to enter upon a concrete bridge carrying the highway across a ravine, * * * thereby forcing the plaintiff to veer to the left suddenly to avoid a collision * * * and in an effort to avoid a collision the plaintiff's left wheels had to be driven upon the shoulder of the highway on the left side and in so doing the wet surface of the shoulder caused plaintiff's automobile to skid shortly before reaching the banister to the bridge."

The evidence showed that Waltner made only one attempt to pass the carrier, during which time the driver on two occasions drove to the left across the center line in front of him. Instead of Waltner making two or more attempts to pass as insisted, the proof indicated that only one continuous attempt was made. Therefore, we find no material variance between the evidence and the allegations contained in the declarations. Besides, our appel-

late courts are not permitted to reverse for error unless it affirmatively appears that the error complained of affected the results of the trial. Code Section 10654.

Assignment 5 complains of the Court's refusal to charge three requests, the substance of which is as follows: (1) that the mere happening of an accident does not create a presumption that the defendant was guilty of negligence; (2) that it was the duty of Waltner, the driver of the car, to be always on the lookout ahead, to keep his automobile under control, and if he failed in any of these duties which caused or proximately contributed to the accident, he could not recover; and (3) that it was the duty of Waltner to be careful and observant and to see and pay heed to all that came within the radius of his vision; that if he failed to see those things which were obvious and which an ordinary prudent person would have seen, and such failure proximately contributed to the accident, he could not recover.

We find no error in the court's refusal to give the foregoing requests, because the substance contained therein had already been amply covered in the general charge. To deny a special request, the substance of which has been covered in the general charge, is not error. Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Graham v. Cloar, 30 Tenn. App. 306, 205 S. W. (2d) 764; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780.

Finally, under assignment 6, the defendant contends that the verdict of the jury and the judgment of the court based thereon is contrary to the law and evidence, because the trial judge failed to exercise his duty as a thirteenth juror. No insistence is made that the Court

did not approve the verdicts. This assignment is based upon the following statement of the trial judge made at the time of overruling each of the motions for a new trial:

"* * * The Court is of the opinion that said motion in each of these cases is not well taken and should be overruled and disallowed, though the Court would not have disturbed the jury verdict had it been for the defendant in these cases."

Because of the equivocal and confusing statement of the learned trial judge, this assignment has given us much concern. However, after carefully reviewing the authorities we have concluded that this assignment should be overruled.

The rule in this state is firmly established that the trial court shall exercise the function of a thirteenth juror upon hearing of a motion for a new trial; that it is his duty to weigh the evidence and independently determine therefrom whether or not it is sufficient to sustain the verdict. England v. Burt, 23 Tenn. 399; Illinois Cent. Railroad v. Brown, 96 Tenn. 559, 35 S. W. 560; Nashville, C. & St. L. R. Co. v. Neely, 102 Tenn. 700, 52 S. W. 167; Telephone & Telegraph Co. v. Smithwick, 112 Tenn. 463, 79 S. W. 803; Carter v. Pickwick Greyhound Lines, 166 Tenn. 200, 60 S. W. (2d) 421; State ex rel. Richardson v. Kenner, 172 Tenn. 34, 109 S. W. (2d) 95; Davis v. Mitchell, 27 Tenn. App. 182, 178 S. W. (2d) 889; Third National Bank v. American Equitable Ins. Co., 27 Tenn. App. 249, 178 S. W. (2d) 915. Sound reasons for the foregoing rule are stated in Telephone & Telegraph Co. v. Smithwick, supra [112 Tenn. 463, 79 S. W. 804], as follows:

"The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the

jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside.''

■ Where the trial judge sees fit to approve a verdict, without reasons, his satisfaction therewith is adequately indicated; but, if he comments thereupon, this court must determine from his observations whether or not he was satisfied with the verdict. Telephone & Telegraph Co. v. Smithwick, supra.

■ It appears from an analysis of the decisions on this subject that where it affirmatively appears that the trial court did not weigh the evidence and was not satisfied with the verdict, our only course is to reverse and remand for a new trial. State ex rel. Richardson v. Kenner, supra. In disposing of a similar question, the middle section of this court, in Third National Bank v. American Equitable Ins. Co., supra, said [27 Tenn. App. 249, 178 S. W· (2d) 922]:

"Certainly that sentence, read in its context, as it must be, does not show, as counsel contend, that the chancellor failed to weigh the evidence or was dis-

satisfied with the verdict. Nor does the following, on which counsel rely: 'Under all the facts and circumstances in this case, the Court cannot set aside the finding of the jury on the evidence for any reason other than that the court might have reached a different conclusion from the evidence, had he been on the jury, and under the authorities above quoted this would not be a proper course.'

"While this would seem a misappreciation of some of the authorities referred to above (but compare [Chattanooga Electric] Railroad Co. v. Finney, 105 Tenn. 648, 650, 48 [58] S. W. 540; Southeastern Greyhound Lines v. Clements, infra [Court of Appeals, unreported, filed May 25, 1940]), it does not show that the chancellor failed to perform his duty of weighing the evidence, or that he was not satisfied with the verdict. Especially is this true, in view of the other parts of the opinion appraising the evidence and pointing out why it preponderated in favor of the verdict. Considered with the rest of the opinion, this sentence is too equivocal and ambiguous to call for a reversal. More or less similar expressions of trial judges have been held no ground for reversal." (Citing numerous cases.)

█ Though the statement of the trial judge is ambiguous and superfluous, it does not affirmatively appear therefrom that he failed to perform his duties in the respects indicated, and, here again, the presumption is that he did.

It results that all assignments of error will be overruled and the judgments will be affirmed at defendant's costs.

McAmis, J., concurring.

Hale, J., dissenting.

Hale, Judge (dissenting).

As I understand appellate procedure it must affirmatively appear that the trial judge has approved the verdict of the jury before we can apply the material evidence rule.

In State ex rel. Richardson v. Kenner, 172 Tenn. 34, 109 S. W. (2d) 95, 96, there is approved the following statement, viz.:

"The case had passed from the jury, and had reached that state in which the judge must approve or disapprove the verdict; and, 'in discharging that exclusive and independent duty, he must unavoidably determine for himself, after giving all due weight to the verdict of the jury, whether or not the evidence * * * was sufficient to sustain that verdict.' "

For the trial Judge to say that he would not have disturbed the Jury's verdict had it been for the defendants, indicates to my mind that the trial judge was controlled entirely by the verdict and that he did not exercise that exclusive and independent judgment required of him. In short, it was not the preponderance of the evidence but the action of the jury that was of sole importance.

I would reverse for this reason.