# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 23, 2013 Session

## MACKENZY RUTH MURDOCK ET AL. v. FORT SANDERS REGIONAL MEDICAL CENTER ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-280-06     Harold M. Wimberly, Judge**

**No. E2012-01650-COA-R3-CV-FILED-APRIL 11, 2013**

After a defense verdict in this medical malpractice case, the plaintiffs filed a motion asking the trial court, sitting as the thirteenth juror, to determine that the verdict was against the weight of the evidence and grant them a new trial. The court denied the motion. The plaintiffs appeal, arguing that the trial court's remarks from the bench show that it did not properly perform its role as the thirteenth juror. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Thomas S. Scott, Jr., Christopher T. Cain, Norman D. McKellar and Andrew S. Roskind, Knoxville, Tennessee, for the appellant, MacKenzy Ruth Murdock.

Rick L. Powers and Rachel Park Hurt, Knoxville, Tennessee, for the appellee, Fort Sanders Regional Medical Center.

Debra A. Thompson and Raymond G. Lewallen, Jr., Knoxville, Tennessee, for the appellee, Donna L. Shine, M.D.

# OPINION

## I.

MacKenzy Ruth Murdock was born by Cesarean section in respiratory distress. She sustained severe and permanent brain damage and mental retardation. Her parents filed this malpractice action on her behalf. We will refer to MacKenzy and her parents collectively as "the Plaintiffs."

The Plaintiffs named as defendants, Dr. Donna L. Shine, the obstetrician who performed the delivery, and Fort Sanders Regional Medical Center, the hospital where MacKenzy was born. We will refer to the obstetrician and the hospital collectively as "the Defendants." The complaint alleges that MacKenzy's injuries were the result of massive Meconium Aspiration Syndrome ("MAS"). The complaint further alleges that the hospital[1]

> negligently failed to immediately recognize [MacKenzy's] meconium aspiration, negligently failed to immediately view [MacKenzy's] vocal cords, negligently failed to immediately suction [MacKenzy's] trachea, despite obvious thick meconium staining, and negligently failed to provide or secure proper ventilatory support at delivery.

The complaint goes on to allege that these failures were all deviations from the acceptable standard of care and that they caused MacKenzy's condition.

The Defendants denied any negligence and further denied that their actions or inactions caused MacKenzy's injuries. They alleged that Mackenzy's problems were the result of an unrelated problem over which they had no control.

The case proceeded to trial before a jury. The trial lasted eight days. The verdict form reveals that the jury returned a unanimous verdict for the Defendants. The record before us does not contain a transcript of the trial.[2] The only record we have with respect to what happened at trial is the court's statements in the transcript of the hearing on the Plaintiffs' motion for new trial. The court first noted how "[s]ad" it was to view videos of MacKenzy who is now an adult that functions "at the level of a very young child because of the

---

[1]The complaint makes nearly identical allegations concerning Dr. Shine.

[2]By mentioning this, we do not mean to imply that we need a transcript of the trial evidence to reach the issue raised on appeal. We do not need it.

significant brain damage that was caused by the lack of oxygen." The court further stated that, from its perspective, "the overriding question was why . . . did that happen?" The court then explained how the proof related to the question it had just posed:

> Two explanations were offered to that. The [P]lantiff[s'] explanation, that it was a failure to clear the meconium from the airways when the child was born. The [D]efendants said that that result was caused by this overwhelming infection.
>
> As was pointed out just now, the proof is that the mother's membranes were ruptured hours before the actual delivery. According to the [D]efendants' theory apparently during that time period after the rupture of the membranes, the bacterial infection was able to enter the uterus and set up in the fetus and was present when the child was born.
>
> The question raised in my mind, you know, was that proper to leave the mother in that condition for that long period of time. No criticism was ever made of that.
>
> There's no testimony that after the rupture of the membrane that something should be done or should have been done earlier as far as delivering the child. So, there's no criticism of that.
>
> Any deviation from the standard of care would have to have been based upon the knowledge of the condition of the child, and at that time that would have been determined by evaluation of the fetal monitor strip or the other monitoring device that was placed there. There was a dispute about the meaning of those readings.
>
> The Court's feeling is there is sufficient evidence to determine that the problems were due to this infection, which is a different thing from saying the problems were due to a meconium presence.
>
> The Court approves the verdict of the jury in this case primarily for that reason, that the evidence does support that again the cause was the infection, which introduced itself during that time period when the membranes were ruptured and, as I say, there's

no criticism of that. That in itself was not a deviation from the standard of care.

In these medical cases you know, it's many times not appropriate to substitute our own opinions of what could have been done or what should have been done. We have to rely upon the testimony of the medical professionals.

In this case there's sufficient evidence to say that the jury result is an acceptable result, and explains the process by which the poor child was deprived of oxygen and is now in the condition that she is with the severe brain damage that she suffers.

So that will be the Court's finding in this case, and we wait until the next case.

The Defendants tendered an order denying the motion for new trial, as did the Plaintiffs. The court signed the order tendered by the Defendants, which states, in pertinent part:

After hearing oral argument from . . . counsel . . ., the Court, acting in its role as 13th Juror, held that the jury's verdicts were supported by the evidence in this case and approved same. It is therefore:

ORDERED, ADJUDGED and DECREED that Plaintiff[s'] Motion for New Trial is denied for the reasons set forth in the transcript of the judge's ruling, attached and incorporated herein as Exhibit 1, and the verdict of the jury is approved by the Court.

II.

The Plaintiffs raise the following issue as taken verbatim from their brief:

Whether, in denying [the] Plaintiff[s'] Motion for New Trial, the Trial Court understood and properly discharged its duty as the thirteenth juror to independently weigh the evidence and determine whether the evidence preponderated for or against the jury's verdict.

-4-

III.

A good synopsis of the role of a trial court as thirteenth juror and the standards by which we review a trial court's action as thirteenth juror is provided in ***Holden v. Rannick***, 682 S.W.2d 903, 904-05 (Tenn. 1984):

> The duty of a trial judge to act as a thirteenth juror in a civil trial in Tennessee is well established. The rule was described in ***Cumberland Telephone & Telegraph Co. v. Smithwick*** as follows:
>
> > [T]his is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside.
>
> 112 Tenn. 463, 469, 79 S.W. 803, 804 (1904).
>
> Where a trial judge has simply approved the verdict without comment, an appellate court will presume that he has adequately performed his function as a thirteenth juror. ***Central Truckaway System v. Waltner***, 36 Tenn. App. 202, 217, 253 S.W.2d 985, 991 (1952). If reasons are given, "this court looks to them only for the purpose of determining whether he passed upon the issues, and was satisfied or dissatisfied with the verdict thereon." ***Smithwick***, *supra*, 112 Tenn. at 470, 79 S.W. at 805. If a trial judge, in discharging his duty as a thirteenth juror, makes comments which indicate that he has misconceived his duty as a thirteenth juror, an appellate court must reverse the trial judge and remand for a new trial. *See* ***Nashville, C. & St. L.R. Co. v. Neely***, 102 Tenn. 700, 52 S.W. 167 (1899).

*Id*.; *see also* ***Miller v. Doe***, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993). The trial court's comments must be considered as a whole. ***Heath v. Memphis Professional Corp.***, 79 S.W.3d 550, 556 (Tenn. Ct. App. 2001).

IV.

The Plaintiffs argue that the trial court's comments impeach its attempted approval of the verdict in four ways. First, the Plaintiffs argue that the trial court's failure to articulate its duty shows that it did not perform its duty. The Plaintiffs rely on **Heath**, 79 S.W.3d at 556, where this court noted that "the trial judge recognized his duty to make an independent review of the evidence." This statement does not mean that failure to expressly articulate the standard means that a trial judge does not know or recognize his or her duty. Moreover, the Plaintiffs' argument impermissibly focuses on part of the transcript and totally ignores the order denying the motion for new trial wherein the trial court stated that "acting in its role as 13th Juror, [the court] held that the jury's verdicts were supported by the evidence in this case and approved same." This is consistent with the Court's statement reflected in the transcript that it "approves" the verdict.

Second, the Plaintiffs argue that the trial court's statement that the "jury result is an acceptable result" shows an inappropriate deference to the jury verdict. The Plaintiffs are correct that the court must make an independent decision, and may not simply defer to the jury. **Holden**, 682 S.W.2d at 906; **Miller**, 873 S.W.2d at 347. The Plaintiffs shortchange the trial court slightly by quoting only a portion of an important sentence. Not only did the trial court say that the jury result is an acceptable result, but also, in the same sentence, it stated that the evidence supports the verdict because it "explains the process by which the poor child was deprived of oxygen and is now in the condition that she is with the severe brain damage . . . ." The court's comments, taken as a whole, show that this was an either/or situation – either the evidence showed that the brain damage was caused by

> a failure to clear the meconium from the airways when the child was born . . . [or] . . . was caused by this overwhelming infection.

The court approved the verdict because

> the evidence does support that again the cause was the infection, which introduced itself during that time period when the membranes were ruptured and as I say, there's no criticism of that.

The court's comments, as a whole, including the statements in its written order and its express approval of the verdict based upon its determination that a non-negligent cause was the culprit, show that the court performed its duty and did not impermissibly defer to the jury.

Third, the Plaintiffs argue that the court's reference to "sufficient" evidence shows that it did not exercise its duty. This is simply a rehash of the second ground, and we reject the argument for the same reason we rejected the Plaintiffs' second argument. There is nothing in the record suggesting that the court used the word "sufficient" as a way of describing how the evidence *was viewed by the jury*. When examined in the context of the totality of the court's comments, it is more likely that the court was stating how the evidence *appeared to the court*.

Finally, the Plaintiffs argue that the trial court's statement that it "approves the verdict" is perfunctory and inconsistent with its other statements. We disagree for the reasons we have already stated.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, MacKenzy Ruth Murdock, a minor, by next friends, parents and natural guardians, McCray Murdock and Katrina Murdock. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE